**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 1st Bank Yuma,<br><br>        Plaintiff,<br><br>v.<br><br>Southwest Heritage Bank, et al.,<br><br>        Defendants. | No. CV-25-00252-PHX-JZB<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE STEPHEN M. MCNAMEE, UNITED STATES DISTRICT JUDGE**:

    Pending before the Court is Plaintiff 1st Bank Yuma's "Motion for Entry of Default Judgment Against Defendants Lincoln J. Moore and Jane Doe Moore" (doc. 48). In its Motion, Plaintiff seeks entry of default judgment against Defendant Lincoln J. Moore in the amount of $1,199,956.00.[1] (Doc. 48 at 14.) This Report and Recommendation is filed pursuant to General Order 21-25.[2] The Court, finding that jurisdiction is proper, the *Eitel*

---

[1] On December 11, 2025, Plaintiff provided "notice that it withdraws its Motion for Default Judgment (the "Motion") (Doc. 48) as to Defendant Jane Doe Moore only." (Doc. 64 at 1.) Accordingly, the Court will only address whether default judgment as to Defendant Lincoln J. Moore is warranted.

[2] General Order 21-25 provides:

> When a United States Magistrate Judge to whom a civil action has been assigned pursuant to Local Rule 3.7(a)(1) considers dismissal to be appropriate but lacks the jurisdiction to do so under 28 U.S.C. § 636(c)(1) due to incomplete status of election by the parties to consent or not consent to the full authority of the Magistrate Judge,
>
> IT IS ORDERED that the Magistrate Judge will prepare a Report and Recommendation for the Chief United States District Judge or designee.

factors weigh in favor of entry of default judgment, and that the requested relief is well established, **recommends granting** default judgment against Lincoln J. Moore.[3]

## I.   Factual Background.

Plaintiff 1st Bank Yuma's action arose out of an alleged "check kiting scheme"[4] involving Defendants Steve Coury Automotive Family Inc. ("SCAF"), Steven Coury, and Lincoln J. Moore. (Doc. 48 at 2.) This alleged scheme involved Defendant SCAF's checking account ending in 2221 that Defendant SCAF maintained with 1st Bank Yuma. (Doc. 1 at 15.)

On May 21, 2024, Defendant Steven Coury, proprietor of SCAF, authorized Defendant Lincoln J. Moore "to conduct and discuss business on behalf of SCAF and all accounts managed by Steven C. Coury at 1st Bank Yuma." (*Id.* at 1, 45) (cleaned up). Because of this express authorization, Defendant Lincoln J. Moore had authority to act on behalf of Defendants SCAF and Steven Coury regarding the account ending in 2221. (*Id.* at 16.)

On September 10, 2024, 1st Bank Yuma notified SCAF that the account ending in 2221 would close on October 9, 2024, and accordingly, SCAF must discontinue writing checks drawn from the account. (*Id.* at 16, 47.) Defendant Lincoln J. Moore met with 1st Bank Yuma executives on September 12, 2024, notifying the executives that there "would be no further activity on the [a]ccount after final deposits on September 13, 16, and 17,

---

IT IS FURTHER ORDERED designating [Senior United States District Judge Stephen M. McNamee] to review and, if deemed suitable, to sign the order of dismissal . . . .

[3] While Plaintiff seeks default judgment under Rule 55(b)(1), which permits entry of default judgment by the Clerk of Court, *see* Fed. R. Civ. P. 55(b)(1), because the amount requested is not clearly sum-certain and there are questions as to jurisdiction, the Court construes Plaintiff's Motion for Default Judgment in accordance with Rule 55(b)(2). *See Molly Moon Films Ltd. v. ARC Ent., LLC*, No. 2:17-cv-09290-CAS-MRWx, 2019 WL 5394178, at *2 n.2 (C.D. Cal. Oct. 21, 2019).

[4] "Check kiting is a scheme designed to separate the bank from its money by tricking it into inflating bank balances and honoring checks drawn against accounts with insufficient funds." *United States v. Frydenlund*, 990 F.2d 822, 824 (5th Cir. 1993) (cleaned up); *Williams v. United States*, 458 U.S. 279, 281 n.1 (1982) (noting that "[i]n effect, the check kiter" profits off the scheme by "tak[ing] advantage of the several-day period required for the transmittal, processing, and payment of checks from accounts in different banks").

2024." (*Id.* at 16, 47.) Relying upon this representation, 1st Bank Yuma's executives agreed to keep the account ending in 2221 open until October 11, 2024. (*Id.* at 16.)

On October 10, 2024, Defendant Lincoln J. Moore deposited seven checks into the account ending in 2221 which were drawn upon Defendant SCAF's account ending in 9893 at Defendant Southwest Heritage Bank ("SWHB"). (*Id.* at 16.) Those checks were: (1) a check ending in 8021 for $85,769; (2) a check ending in 8022 for $89,781; (3) a check ending in 8023 for $88,644; (4) a check ending in 8024 for $96,769; (5) a check ending in 8025 for $94,415; (6) a check ending in 8026 for $79,554; and (7) a check ending in 8027 for $65,046. (Doc. 48 at 22, 24, 26, 28, 30, 32, 34.) In total, the amount deposited was $599,978. (Doc. 1 at 17.) 1st Bank Yuma immediately placed a hold on the aforementioned checks pending confirmation that the checks cleared SCAF's SWHB account. (*Id.*) The hold was set to last for seven business days, or until October 22, 2024. (*Id.*)

Defendant Lincoln J. Moore, wanting immediate access to the $599,978, provided 1st Bank Yuma with a letter on SWHB letterhead confirming that the checks had cleared SWHB on October 11, 2024. (*Id.*) Immediately after receiving the letter, 1st Bank Yuma's assistant branch manager contacted a banker at SWHB to confirm the veracity of the letter and confirm that the seven checks had cleared SWHB as of October 11, 2024. (*Id.*) The SWHB banker confirmed the veracity of the letter and that the checks had in fact cleared SWHB. (*Id.*) Relying upon the confirmation, 1st Bank Yuma released the hold on the checks, making funds available to SCAF. (*Id.*) Thereafter, Defendant Lincoln J. Moore withdrew 14 checks from the account ending in 2221, totaling $598,971.73. (*Id.* at 17, 68–69.) This left a total of $1,006.27 in the account, which 1st Bank Yuma later issued as a cashier's check on October 11, 2024, when the account ending in 2221 closed. (*Id.* at 17–18.)

On October 16 and 17, 2024, SWHB returned the issued checks—nos. 8021–27—for stop payment and charged back the full amount of those checks to 1st Bank Yuma. (*Id.* at 18.) Because of the chargebacks, 1st Bank Yuma redeposited the cashier's check of $1,006.27 into the account ending in 2221. (*Id.*) The chargebacks resulted in the account

ending in 2221 to be overdrawn by $598,971.73. (*Id.* at 18, 69.)

While it does not appear that Jane Doe Moore participated in the alleged check kiting scheme, Plaintiff notes that "[u]pon information and belief," Jane Doe Moore is married to Lincoln Moore. (*Id.* at 15.) Plaintiff further alleges that "[a]ll acts alleged herein having been committed by [Lincoln J.] Moore were undertaken for the benefit of Moore's marital community." (*Id.*) While Defendant Jane Doe Moore did not herself participate in the alleged scheme, she is named as a defendant pursuant to Arizona community property laws so that 1st Bank Yuma may reach Lincoln J. Moore and Jane Doe Moore's community property. (doc. 48 at 2 n.2) (citing *Harmon v. RAR Enterprises Inc.*, No. CV 10-01813-PHX-FJM, 2011 WL 5978483, at *2 (D. Ariz. Nov. 30, 2011) (noting that under A.R.S. § 25-215(D), "[s]pouses must be sued jointly under Arizona law in order to reach community assets")).

## II.    Procedural Background.

Plaintiff 1st Bank Yuma initiated this action on January 3, 2025, when it filed its Complaint in the Maricopa County Superior Court. (Doc. 1 at 31.) Plaintiff's Complaint contained eleven Counts, three of which applied to Defendants Lincoln J. Moore. *See* (*id.* at 24–27); *see also* (doc. 48 at 2.) Those Counts were: (1) liability for bad checks under A.R.S. § 12-671; (2) drawer liability under A.R.S. § 47-3414; and (3) indorser liability under A.R.S. § 47-3415. (Doc. 1 at 24–27.) This action was removed to the U.S. District Court for the District of Arizona on January 27, 2025. *See* (*id.* at 3.)

Plaintiff made a number of unsuccessful attempts to effectuate service of process upon Defendants Lincoln and Jane Doe Moore before filing a motion to authorize alternative service of process on March 18, 2025. (Doc. 22 at 2.) First, Plaintiff attempted to effectuate service of process in person at two identified residences, "1925 E. Palomino Dr., Tempe, Arizona (the "Arizona Residence") and 513 Providence Cir., Edmond, Oklahoma (the "Oklahoma Residence")." [5] (*Id.*) Second, Plaintiff attempted to serve the

---

[5] The Court notes that in this action's sister case, *Southwest Heritage Bank v. Coury*, 2:25-cv-00047-SMM-JZB, the Plaintiff in that action was able to successfully execute service upon Defendant Lincoln J. Moore at the Oklahoma Residence. *See Southwest Heritage Bank v. Coury*, 2:25-cv-00047-SMM-JZB, doc. 7 (D. Ariz. Jan. 17, 2025).

- 4 -

1  Defendants via certified mail to the Oklahoma Residence. (*Id.* at 3.) Both attempts to
2  effectuate service of process proved unsuccessful, leading to Plaintiff requesting—and
3  subsequently receiving—authorization to use alternative service upon the Defendants.
4  (Doc. 22 at 4–7); (doc. 27 at 1.) Specifically, Plaintiff was authorized to serve the
5  Defendants by: (1) mailing a copy of the pleadings to the Oklahoma Residence; (2)
6  emailing the pleadings to Lincoln J. Moore's email address; (3) transmitting the pleadings
7  to Lincoln J. Moore's Facebook account; (4) posting the pleadings in a conspicuous
8  location at the Oklahoma Residence; and (5) sending and SMS/text message to a phone
9  number linked to Defendant Lincoln J. Moore with links to the pleadings. (Doc. 27 at 1–
10 2.) On May 16, 2025, Plaintiff filed notice that service was effectuated upon both
11 Defendants via the authorized alternative service.[6] (Docs. 30, 31.)

On June 2, 2025, Plaintiff filed an Application for Entry of Default. (Doc. 38.) The following day, the Clerk of Court filed an Entry of Default as to Defendants Lincoln and Jane Doe Moore. (Doc. 39.) On September 15, 2025, Plaintiff filed its Motion for Entry of Default Judgment Against Defendants Lincoln J. Moore and Jane Doe Moore. *See* (doc. 48.) On December 11, 2025, Plaintiff provided notice of its intent to withdraw the Motion for Default Judgment as to Defendant Jane Doe Moore only." (Doc. 64 at 1.) To date, Defendant Lincoln J. Moore has not appeared in this case.

**III.   Legal Standards**.

Rule 55 states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Court's "starting point is the general rule that default judgments are ordinarily

---

[6] The Court notes that both affidavits of service for Lincoln and Jane Doe Moore were signed by process server Gary C. Glocke, and then notarized by Courtney B. Glocke. (Doc. 30 at 2–3); (doc. 31 at 2–3.) While it appears that the process server and notary are related, under both Arizona and Oklahoma law, notarizing a document for a relative is not expressly prohibited. *See Deal v. Deal*, 503 P.3d 838, 841–42 (Ariz. App. 2021); *see also* Okla. Stat. Ann. tit. 49, § 113.

disfavored." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In considering default judgment against parties that have "failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A default judgment entered by a district court devoid of personal or subject matter jurisdiction is void. *Id.* A court has personal jurisdiction over a party where that party has sufficient "minimum contacts" with the territory "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A court has federal-question subject matter jurisdiction where, "on the face of the plaintiff's properly pleaded complaint," the civil action in question "aris[es] under the Constitution, laws, or treaties of the United States." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 392 n.6 (1987) (quoting 28 U.S.C. § 1331).

After personal and subject matter jurisdiction have been established, the court must consider whether default judgment is proper under the *Eitel* factors. *See Eitel*, 782 F.2d at 1471–72. The *Eitel* factors are:

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*

In applying the *Eitel* factors, the Court notes that, "for default judgment purposes[,] . . . 'well-pled allegations in the complaint regarding liability are deemed true.'" *Ariz. Bd. of Regents v. Doe*, 555 F. Supp. 3d 805, 815 (D. Ariz. 2021), *aff'd sub nom. Arizona Bd. of Regents for and on behalf of Arizona State U. v. Doe*, No. 21-16525, 2022 WL 1514649 (9th Cir. May 13, 2022) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)). "However, necessary facts not contained in the pleadings, and claims which

are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

**IV. Discussion**.

The Court will proceed as follows. First, the Court will analyze whether in has proper jurisdiction over this matter. Second, the Court will analyze whether default judgment is proper under the *Eitel* factors.

***A. Jurisdiction***.

For the following reasons, the Court finds that: (1) subject-matter jurisdiction is proper in the case at hand; (2) it has personal jurisdiction over Defendant Lincoln J. Moore; and (3) venue is proper in this matter.

1. <u>Subject-Matter Jurisdiction</u>.

Plaintiff 1st Bank Yuma asserts that the Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1441, because Plaintiff's Complaint alleged that SWHB breached a warranty owed to Plaintiff under the Expedited Funds Availability Act ("EFAA") (12 U.S.C. §§ 4001 *et seq.*).[7] (Doc. 48 at 5.) While Plaintiff does not allege any federal claims against Defendants Lincoln and Jane Doe Moore, Plaintiff alleges that the Court has supplemental jurisdiction over the asserted state law claims under 28 U.S.C. § 1367.

The Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331 because of the EFAA claim. *See* 28 U.S.C. § 1331. The Court finds that it has supplemental jurisdiction over the claims against Lincoln and Jane Doe Moore under 28 U.S.C. § 1367 because the state law claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a); *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025) ("The federal court has supplemental jurisdiction over state-law claims sharing a 'common nucleus of operative fact' with the federal-law ones.") (citation omitted).

//

---

[7] Defendant SWHB removed this case from the Superior Court of Arizona, Maricopa County, on January 27, 2025. (Doc. 1 at 1.)

- 7 -

2. Personal Jurisdiction.

The next issue is whether the Court has personal jurisdiction over Lincoln J. Moore. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Arizona state law permits the exercise of personal jurisdiction over parties "to the extent permitted under the United States Constitution." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (citing Ariz. R. Civ. P. 4.2(a)). "Therefore, the determination whether the District Court had personal jurisdiction over Defendants is subject to the terms of the Due Process Clause of the Fourteenth Amendment." *Morrill*, 873 F.3d at 1141. The Due Process Clause requires that, for a Court to exercise personal jurisdiction over a defendant, that defendant must have sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (cleaned up).

There are two categories of personal jurisdiction, namely, general and specific. *Freestream Aircraft (Bermuda) Ltd. v. Aero Ltd. Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). Plaintiff solely alleges that the Court has specific personal jurisdiction over Defendant Lincoln J. Moore. (Doc. 48 at 6.) Accordingly, the Court will analyze whether it has specific personal jurisdiction over the Defendant.

"The inquiry whether a forum State may assert specific jurisdiction over . . . nonresident defendant[s] focuses on the relationship among the defendant[s], the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). "The 'primary concern' in assessing [specific] personal jurisdiction is 'the burden on the defendant[s].'" *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255 (2017) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Specifically, the Court analyzes the following three factors to determine whether a defendant had sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of

      conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Morrill*, 873 F.3d at 1142. The Plaintiff bears the burden of establishing the first two *Morrill* elements. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the Plaintiff satisfies the first two elements, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

      In analyzing the first *Morrill* element, courts generally apply the *Dole* purposeful direction test where the claims arise from alleged tortious conduct. *Morrill*, 873 F.3d at 1142. The purposeful direction test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

      Because the claims alleged against Defendant Lincoln J. Moore arise from tortious acts—namely, intent to defraud and other financial malfeasance—the Court will apply the *Dole* purposeful direction test to him in analyzing whether the Court has specific personal jurisdiction.

      Establishing specific personal jurisdiction over Defendant Lincoln J. Moore is rather clear in this case. Turning to the first *Morrill* specific personal jurisdiction element, the Court finds that Defendant Lincoln J. Moore had purposefully directed his acts towards the forum state—*i.e.*, Arizona. Under the first *Dole* factor, Defendant allegedly committed a *prima facie* intentional defrauding of a financial institution under A.R.S. § 12-671. *See* (doc. 48 at 9.) Under the second *Dole* factor, the Court finds that such act was expressly aimed at the forum state considering that the acts were committed in Arizona upon 1st Bank Yuma, "an Arizona corporation that does business in Yuma County, Arizona." (Doc. 1 at 14.) Next, applying the third *Dole* factor, Plaintiff's pleadings and filings make it clear that its entire financial loss caused by Defendant was incurred in Arizona. Seeing as the

- 9 -

three-part *Dole* test is satisfied, the first *Morrill* specific personal jurisdiction element is likewise satisfied.

The second *Morrill* element is satisfied just as easily as the first. Defendant Lincoln J. Moore's alleged activities depositing the seven checks in the account ending in 2221, and his withdrawal of 14 checks from that account thereafter, directly led to this action. In short, but for Defendant Lincoln J. Moore's acts, this action would not have arisen.

Because the first two *Morrill* elements are satisfied, the burden of proof for rebutting reasonableness falls upon Defendant, which—considering his failure to litigate—he has failed to do. But, regardless of his failure to litigate, the Court concludes that the exercise of specific personal jurisdiction does comport with fair play and substantial justice for the foregoing reasons.[8] Therefore, the Court finds personal jurisdiction as to Defendant Lincoln J. Moore proper in this case.

3. <u>Venue</u>.

Venue is proper in the present case. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." quoting 28 U.S.C. § 1391(b)(1). "Additionally, "[v]enue is proper in any district 'in which a substantial part of the events or omissions giving rise to the claim occurred.'" *Noodles Dev., LP v. Hui*, No. CV-12-01165-PHX-ROS, 2013 WL 12111103, at *6 (D. Ariz. July 22, 2013) (quoting 28 U.S.C. § 1391(b)(2)). Because a substantial part of the events occurred in Arizona, venue is satisfied.

**B. Default Judgment**.

Plaintiff seeks an entry of default judgment against Defendant Lincoln J. Moore. The Court will accordingly analyze whether default judgment is proper under the seven *Eitel* factors.

1. <u>The Possibility of Prejudice to the Plaintiff</u>.

The first factor favors granting Plaintiff 1st Bank Yuma's motion for default

---

[8] As a final matter on personal jurisdiction, the Court finds service of process was properly effectuated so as to permit this Court to exercise personal jurisdiction. *See* (docs. 27, 30.)

- 10 -

judgment because Plaintiff will be prejudiced if default judgment is not entered. Defendant Lincoln J. Moore has "yet to respond or participate in the litigation[.]" (Doc. 48 at 7.) "If Plaintiff's motion for default judgment is not granted, Plaintiff 'will likely be without other recourse for recovery.'" *United States v. $86,496.00 in U.S. Currency*, 2008 WL 2687141, at *2 (D. Ariz. 2008) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

2. The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint.

The second and third *Eitel* factors "are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Ent. USA Inc. v. Baldinsky*, No. CV-22-00970-PHX-DWL, 2023 WL 8185673, at *3 (D. Ariz. Nov. 27, 2023) (citation omitted). Where Plaintiff's Complaint states a claim upon which they may recover, the second and third factors "weigh in favor of default judgment." *Joe Hand Promotions Inc. v. Alvarez*, No. CV-23-01924-PHX-DJH, 2025 WL 1707915, at *2 (D. Ariz. June 18, 2025) (citing *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010)).

Plaintiff 1st Bank Yuma's Complaint asserts the following claims against Defendant Lincoln J. Moore: (a) liability under Arizona's bad check statute, A.R.S. § 12-671; (b) Drawer Liability under A.R.S. § 47-3414; and (c) Indorser Liability under A.R.S. § 47-3415. (Doc. 48 at 9.) The Court will address each claim in turn.

a. *Arizona Bad Check Statute*.

The first issue is whether Plaintiff has asserted a sufficient Arizona bad check claim. A person is liable for violating Arizona's bad check statute where they:

> with intent to defraud, makes, draws, utters or delivers to another person or persons a check or draft on a bank or depositary for payment of money, knowing at the time of such making, drawing, uttering or delivery, that he or his principal does not have an account or does not have sufficient funds in, or credit with, such bank or depositary to meet the check or draft in full upon presentation, shall be liable to the holder of such check or draft for twice the amount of such check or draft or fifty dollars, whichever is greater, together

> with costs and reasonable attorney's fees as allowed by the court on the basis of time and effort expended by such attorney on behalf of plaintiff.

A.R.S. § 12-671(A). Prima facie evidence of intent to defraud results where the "drawer did not have sufficient funds with the bank or depositary, and that he failed within twelve days after receiving notice of nonpayment or dishonor to pay the check[s.]" A.R.S. § 12-671(C). A corporation's agent signing a company check "could be held personally liable for his actions if he signed the check fraudulently." *Harmon v. RAR Enters. Inc.*, No. CV 10-01813-PHX-FJM, 2011 WL 5978483, at *2 (D. Ariz. Nov. 30, 2011).

In applying the facts of this case, the Court finds that Plaintiff has stated a claim upon which relief may be granted. First, all seven checks—totaling $599,978—deposited by Defendant Moore, which Plaintiff honored, were subsequently placed under a stop payment directive. *See* (doc. 48 at 22–35); *see also* (doc. 1 at 69.) Defendant Lincoln J. Moore was an authorized agent for Steve Coury Ford. (Doc. 1 at 45.) The checks were withdrawn from Steve Coury Ford's account at Southwest Heritage Bank. *See* (doc. 48 at 22–35). When Defendant Moore withdrew the funds from Plaintiff 1st Bank Yuma, the Steven Coury account ending in 2221 did not have sufficient funds to make such transaction, which led to the account, after crediting additional deposits in October, to be overdrawn by $422,682.86. *See* (doc. 1 at 69, 78.) Additionally, there appears to be prima facie evidence of intent to defraud because Plaintiff sent Defendant Lincoln J. Moore a notice of dishonored checks on November 7, 2024, which Defendant did not pay within A.R.S. § 12-671(C)'s twelve-day deadline. *See* (*id.* at 72.)

Based on these facts, and the principle that the "well-pled allegations in the complaint regarding liability are deemed true[,]" *Ariz. Bd. of Regents v. Doe*, 555 F. Supp. 3d at 815, the Court concludes that Plaintiff 1st Bank Yuma has stated an Arizona bad check statute claim upon which they may recover.

    b. *Drawer Liability*.

The second issue is whether Plaintiff 1st Bank Yuma has asserted a sufficient claim for Drawer Liability under Arizona law. Under Arizona's Drawer Liability statute:

> If an unaccepted draft is dishonored, the drawer is obliged to pay the draft according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder, or if the drawer signed an incomplete instrument, according to its terms when completed, to the extent stated in §§ 47-3115 and 47-3407. The obligation is owed to a person entitled to enforce the draft or to an indorser who paid the draft under § 47-3415.

A.R.S. § 47-3414(B). Acceptance of a draft is defined as:

> the drawee's signed agreement to pay a draft as presented. It must be written on the draft and may consist of the drawee's signature alone. Acceptance may be made at any time and becomes effective when notification pursuant to instructions is given or the accepted draft is delivered for the purpose of giving rights on the acceptance to any person.

A.R.S. § 47-3409(A). "If a draft is accepted by a bank, the drawer is discharged, regardless of when or by whom acceptance was obtained." A.R.S. § 47-3414(C).

The Court finds that Plaintiff has stated a sufficient Drawer Liability claim upon which relief may be granted. All the seven checks issued by Defendant Lincoln J. Moore were never accepted by 1st Bank Yuma, as can be determined by the face of each check.[9] *See* (doc. 48 at 22–35). On October 16 and 17, 2024, these checks were placed under a stop payment directive. *See* (doc. 1 at 69.) On November 7, 2024, a notice of dishonored checks was sent to Defendants Steven Coury, Lincoln J. Moore, and SCF. *See* (*id.* at 72.) Because the checks were never accepted and were dishonored, Defendant Lincoln J. Moore is obliged to pay the draft. *See* A.R.S. § 47-3414(B). Accordingly, Plaintiff Yuma has asserted a sufficient claim for Drawer Liability under Arizona law.

   c. *Indorser Liability*.

The third issue is whether Plaintiff 1st Bank Yuma has asserted a sufficient claim for Indorser Liability under Arizona law. Under Arizona's Indorser Liability statute:

> if an instrument is dishonored, an indorser is obliged to pay the amount due

---

[9] "In the case of a check, the acceptance is known as 'certification,' formerly a rubber stamp on the face side of the check with the date and the signature of the certifying officer, but nowadays most often done by the bank with a protectograph machine (which creates a perforated embossing of the check amount and the date of certification accompanied by the legend, 'Certified' on the face side of the check, together with the signature of the certifying officer)." 6 ARIZ. LEGAL FORMS, COMM. TRANSACTIONS § 3.19 (2d ed.).

on the instrument according to the terms of the instrument at the time it was indorsed[.] The obligation of the indorser is owed to a person entitled to enforce the instrument or to a subsequent indorser who paid the instrument under this section.

A.R.S. § 47-3415(A).

Applying the facts of this case to Arizona's Indorser Liability statute, the Court finds that Plaintiff 1st Bank Yuma has stated a sufficient claim upon which they may recover. This is because the seven checks were dishonored,[10] Plaintiff was the holder of the checks, and Plaintiff was entitled to enforce the seven checks because it was the holder of the checks. *See* A.R.S. § 47-3301 (defining a "Person Entitled to Enforce" as "the holder of the instrument"). Therefore, Plaintiff Yuma has asserted a sufficient claim for Indorser Liability under Arizona law.

    3.  <u>The Sum of Money at Stake in the Action</u>.

Under the Fourth *Eitel* factor, "the Court considers the amount of money at stake in relation to the seriousness of the defendant[s'] conduct." *Su v. Infinisys Inc.*, No. CV-23-00776-PHX-DWL, 2023 WL 6517445, at *2 (D. Ariz. Oct. 5, 2023). This factor requires the Court to "assess whether the recovery sought is proportional to the harm caused by defendant[s'] conduct." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

Plaintiff 1st Bank Yuma "seeks recovery of twice the amount of the Checks ($1,199,956.00) pursuant to A.R.S. § 12-671(A)." Under that provision, a person with "intent to defraud" who draws or delivers a check knowing that themselves or the principle's account has insufficient funds "shall be liable to the holder of such check . . . for twice the amount of such check . . . or fifty dollars, whichever is greater, together with costs and reasonable attorney's fees[.]" A.R.S. § 12-671(A). As mentioned above, taking Plaintiff's well-plead allegations as true, Defendant Lincoln J. Moore deposited the seven checks with the intent to defraud in violation of A.R.S. § 12-671(A).[11] Because of this violation, Plaintiff may recover twice the value of such checks, "or fifty dollars, whichever

---

[10]    *See infra* section IV.B.2.b.
[11]    *See infra* section IV.B.2.a.

is greater[.]" *Id.* The total value of all seven checks, which may be gleaned from both the face of the checks and account 2221's deposit history, was $599,978.00. *See* (doc. 48 at 22–35); *see also* (doc. 1 at 68.) Multiplying $599,978.00 by two equals $1,199,956.00. Because "the Arizona legislature has found that a suitable award for a bad check includes damages for twice the amount of the check," *Wells Fargo Bank NA v. Worldwide Car Co. LLC*, No. CV-21-01348-PHX-DJH, 2022 WL 2753776, at *2 (D. Ariz. July 14, 2022), and considering the amount requested is double the amount of the seven bad checks, the Court finds the requested recovery to be proportional to the harm caused by Defendant Lincoln J. Moore. Therefore, this factor weights in favor of entry of default judgment.

       4. <u>The Possibility of a Dispute Concerning Material Facts, Whether the Default was Due to Excusable Neglect, and the Strong Policy Favoring Decisions on the Merits</u>.

Where a Defendant has not participated in the litigation, the "fifth, sixth, and seventh factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020). As the *Zekelman* court noted:

> The fifth and sixth factors weigh in favor of default judgment or are neutral. Due to Defendants' failure to participate, there is no dispute over material facts (except as to damages) and no indication that default is due to excusable neglect.
> The seventh factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) of the Federal Rules of Civil Procedure, which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177.

*Id*. at *4.

Because there is no dispute over material facts due to Defendant Lincoln J. Moore's default, and because his default was not due to excusable neglect because he was served, *see* (docs. 27, 30), the Court finds that the fifth and sixth Eitel factors weigh in favor of granting Plaintiff 1st Bank Yuma's motion for default judgment. Finally, because

Defendant Lincoln J. Moore has not contested Plaintiff's Complaint, the Court finds that while the seventh factor disfavors default judgment, it is insufficient to wholly preclude Plaintiff 1st Bank Yuma from receiving default judgment.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff 1st Bank Yuma's Motion for Entry of Default Judgment Against Defendants Lincoln J. Moore and Jane Doe Moore (doc. 48) be **GRANTED** as to Defendant Lincoln J. Moore only.

**IT IS FURTHER RECOMMENDED** that judgment in the amount of **$1,199,956.00** be entered against Defendant Lincoln J. Moore.

**IT IS FURTHER RECOMMENDED** that Plaintiff 1st Bank Yuma may file a motion for attorneys' fees and costs within **FOURTEEN (14) DAYS** if the District Court adopts this Report and Recommendation.

**IT IS ORDERED** that the Clerk of Court shall mail a copy of this Report and Recommendation to: **513 Providence Cir., Edmond, Oklahoma 73003-6152**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail a copy of this Report and Recommendation to: **1925 E. Palomino Dr., Tempe, Arizona 85284-8024**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall email a copy of this Report and Recommendation to Defendant Lincoln J. Moore at: **lincoln.moore@stevecoury.com**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The Parties shall have 21 days[12] from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 6, 72. Thereafter, the Parties have 14 days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and

---

[12] The Court notes that, as a general matter, the Parties are given 14 days to file written objections. However, in light of the service-related issues present in this action, the Court will provide additional time for Plaintiff to object to this Report and Recommendation to ensure fairness in the resolution of this matter. *See* Fed. R. Civ. P. 6(b)(1)(A).

Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 7th day of January, 2026.

Honorable John Z. Boyle
United States Magistrate Judge