**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

OneAZ Credit Union,

Plaintiff,

v.

Southwest Heritage Bank, et al.,

Defendants.

No. CV-25-00252-PHX-JZB

**ORDER**

Pending before the Court is Defendant Southwest Heritage Bank's ("Defendant") "Motion for Leave to File Counterclaim." (Doc. 101.) Defendant's Motion seeks leave to file a lodged Counterclaim consisting of four counts. (Doc. 102.) This matter is fully briefed, and the parties have conducted a telephonic hearing before the Court. Given Defendant's lack of diligence and the untimeliness of the instant Motion, the Court does not find good cause to amend the scheduling order. Consequently, Defendant's Motion is denied.

## I. BACKGROUND.

The instant action arises out of an alleged check kiting scheme involving Defendants Steve Coury Automotive Family Inc. ("SCAF"), Steven Coury, and Lincoln J. Moore.[1] (Doc. 48 at 2.) This alleged scheme involved Defendant SCAF's checking account ending in 2221 that Defendant SCAF maintained with former Plaintiff 1st Bank Yuma—the predecessor in interest to the current Plaintiff. (Doc. 1 at 15); (doc. 83.) As the Court

[1] Defendant Lincoln J. Moore was dismissed after Plaintiff's Motion for Default Judgment (doc. 48) was granted. *See* (doc. 66.)

previously noted in its January 7, 2026, Report and Recommendation:

> On May 21, 2024, Defendant Steven Coury, owner of SCAF, authorized Defendant Lincoln J. Moore "to conduct and discuss business on behalf of SCAF and all accounts managed by Steven C. Coury at 1st Bank Yuma." (*Id.* at 1, 45) (cleaned up). Because of this express authorization, Defendant Lincoln J. Moore had authority to act on behalf of Defendants SCAF and Steven Coury regarding the account ending in 2221. (*Id.* at 16.)
>
> On September 10, 2024, 1st Bank Yuma notified SCAF that the account ending in 2221 would close on October 9, 2024, and accordingly, SCAF must discontinue writing checks drawn from the account. (*Id.* at 16, 47.) Defendant Lincoln J. Moore met with 1st Bank Yuma executives on September 12, 2024, notifying the executives that there "would be no further activity on the [a]ccount after final deposits on September 13, 16, and 17, 2024." (*Id.* at 16, 47.) Relying upon this representation, 1st Bank Yuma's executives agreed to keep the account ending in 2221 open until October 11, 2024. (*Id.* at 16.)
>
> On October 10, 2024, Defendant Lincoln J. Moore deposited seven checks into the account ending in 2221 which were drawn upon Defendant SCAF's account ending in 9893 at Defendant Southwest Heritage Bank ("SWHB"). (*Id.* at 16.) Those checks were: (1) a check ending in 8021 for $85,769; (2) a check ending in 8022 for $89,781; (3) a check ending in 8023 for $88,644; (4) a check ending in 8024 for $96,769; (5) a check ending in 8025 for $94,415; (6) a check ending in 8026 for $79,554; and (7) a check ending in 8027 for $65,046. (Doc. 48 at 22, 24, 26, 28, 30, 32, 34.) In total, the amount deposited was $599,978. (Doc. 1 at 17.) 1st Bank Yuma immediately placed a hold on the aforementioned checks pending confirmation that the checks cleared SCAF's SWHB account. (*Id.*) The hold was set to last for seven business days, or until October 22, 2024. (*Id.*)
>
> Defendant Lincoln J. Moore, wanting immediate access to the $599,978, provided 1st Bank Yuma with a letter on SWHB letterhead confirming that the checks had cleared SWHB on October 11, 2024. (*Id.*) Immediately after receiving the letter, 1st Bank Yuma's assistant branch manager contacted a banker at SWHB to confirm the veracity of the letter and confirm that the seven checks had cleared SWHB as of October 11, 2024. (*Id.*) The SWHB banker confirmed the veracity of the letter and that the checks had in fact cleared SWHB. (*Id.*) Relying upon the confirmation, 1st Bank Yuma released the hold on the checks, making funds available to SCAF. (*Id.*) Thereafter, Defendant Lincoln J. Moore withdrew 14 checks from the account ending in 2221, totaling $598,971.73. (*Id.* at 17, 68–69.) This left a total of $1,006.27 in the account, which 1st Bank Yuma later issued as a cashier's check on October 11, 2024, when the account ending in 2221 closed. (*Id.* at 17–18.)

> On October 16 and 17, 2024, SWHB returned the issued checks—nos. 8021–27—for stop payment and charged back the full amount of those checks to 1st Bank Yuma. (*Id.* at 18.) Because of the chargebacks, 1st Bank Yuma redeposited the cashier's check of $1,006.27 into the account ending in 2221. (*Id.*) The chargebacks resulted in the account ending in 2221 to be overdrawn by $598,971.73. (*Id.* at 18, 69.)

(Doc. 65 at 2–4.)

On January 3, 2025, Plaintiff initiated this action in the Maricopa County Superior Court. (Doc. 1 at 31.) This case was removed by Defendant on January 27, 2025. *See generally* (*id.*) Since removal, the parties have litigated this action in a unique manner. As it is pertinent to the instant Motion, the parties have engaged in two separate dispositive motions practice. Specifically, from April 24, 2025, to September 26, 2025, and February 9, 2026, to April 30, 2026, the parties filed motions and cross-motions for partial summary judgment—which were all voluntarily withdrawn. (Docs. 28, 33, 35, 55–56, 69, 78, 90.) In the interim between these two periods, the Court issued a Case Management Order on November 12, 2025, wherein the parties' amendment deadline was set as "60 days from the date of th[e] Order." (Doc. 61 at 2.) Thus, pursuant to Fed. R. Civ. P. 6, the parties' amendment deadline was January 12, 2026. *See* Fed. R. Civ. P. 6(a)(1)(C), (5).

Up until the voluntary withdrawal of Defendant's Motion for Partial Summary Judgment on April 30, 2026, (doc. 90), the parties conducted limited discovery in this matter, including initial disclosures on September 19, 2025, and Plaintiff's first set of requests for admission, non-uniform interrogatories, and requests for production on November 19, 2025. (Docs. 50–52, 62.)

After Defendant's voluntary withdrawal of the motion, the parties engaged in additional discovery.[2] (Docs. 91, 98.) It was during this 'second period' of discovery—*i.e.*, from May of 2026 to July of 2026—that several matters came to light, including that: (1)

---

[2] The Court notes that, during this time, Defendant's served discovery requests upon Plaintiff that were technically late. *See* (doc. 117.) However, the parties mutually agreed to excuse the late filings. *See* (*id.*) Thus, the Court will likewise consider these matters as if they were timely filed. More so, the Court greatly appreciates and commends the parties for their display of professional curtesy and collaborative litigation in this action.

"1st Bank [allegedly] became aware of the alerts on the Coury Parties on or about March 27, 2024 via a committee that evaluates suspicious activity"; (2) "[allegedly, a]t least one 1st Bank executive, [Assistant Vice President/Operations Manager] Ruby Sanchez, suspected the Coury Parties were engaging in a check-kiting scheme prior to June of 2024"; (3) "1st Bank [allegedly] became aware not later than July 1, 2024 that the Coury Parties were specifically engaged in a check-kiting scheme"; and (4) "[allegedly, a]s a result of further meetings and/or correspondence, 1st Bank and the Coury Parties reached an "Agreement" for the purpose of reducing the negative balance in the Account [wherein] 1st Bank proposed that they would allow funds in the Account to be immediately available to the Coury parties if the Coury Parties were able to obtain letters confirming that checks drawn on Southwest Heritage Bank had cleared[.]" (Doc. 115 at 5–6.)

Due to Defendant's discovery of these matters, they filed the instant Motion and lodged proposed Counterclaim on July 29, 2026—198 days after the amendment deadline expired. *Compare* (docs. 101–02) *with* (doc. 61). In its proposed Counterclaim, Defendant asserts four claims against Plaintiff: (1) aiding and abetting fraud; (2) violations of federal Civil Racketeer Influenced and Corrupt Organizations Act ("Civil RICO") pursuant to 18 U.S.C. § 1962; (3) violations of Arizona state Civil RICO pursuant to A.R.S. § 13-2314.04; and (4) institutional negligence. (Doc. 102.)

## II. LEGAL STANDARDS.

The Federal Rules of Civil Procedure permit parties to amend its pleadings before trial. Fed. R. Civ. P. 15(a). For timely motions for leave to amend, the Court applies Rule 15,[3] which states that "[t]he [C]ourt should freely give leave [to amend] when justice so requires." *Id.* at 15(a)(2). However, "[o]nce the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings[, Rule 16's] standards control[.]" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). In other words, while Rule 15 governs timely

[3] Prior to its abrogation in 2009, attempts to amend or add counterclaims were governed by Fed. R. Civ. P. 13(f). *See* Fed. R. Civ. P. 13 Advisory Committee's Notes to 2009 Amendment ("Rule 13(f) is deleted as largely redundant and potentially misleading. An amendment to add a counterclaim will be governed by Rule 15.").

motions for leave to amend, once the case management order's amendment deadline has expired, the moving "party must *first* satisfy the requirements of Rule 16, and *then* must demonstrate amendment is proper under Rule 15." *Acosta v. Austin Elec. Servs. LLC*, 325 F.R.D. 325, 328 (D. Ariz. 2018) (citing *Johnson*, 975 F.2d at 608); *cf. Eckert Cold Storage v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996) (citations omitted) ("To permit a party to disregard a Rule 16 order by an appeal to the standards of Rule 15 would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier."). Because the deadline to amend in this action has expired, Defendant must satisfy both Rules 15 and 16. *See Acosta*, 325 F.R.D. at 328; *see also Zurich Am. Ins. Co. v. Chevron U.S.A. Inc.*, No. 24-cv-02733-JSC, 2026 U.S. Dist. LEXIS 70627, at *7 (N.D. Cal. Mar. 6, 2026) ("If the Court finds that Rule 16 is satisfied, it then must evaluate the request to amend under Rule 15(a)'s more liberal standard.").

"Under Rule 16, a court may only modify a scheduling order for 'good cause.'" *Id.* (citing Fed. R. Civ. P. 16(b)(4)). "A court's evaluation of good cause is *not* coextensive with an inquiry into the propriety of the amendment under Rule 15." *Morgal v. Maricopa Cnty. Bd. of Supervisors*, 284 F.R.D. 452, 459 (D. Ariz. 2012) (cleaned up). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609; *Fireman's Fund Ins. Co. v. Wood Invs., Inc.*, No. 8:23-cv-02200-JWH-KES, 2026 U.S. Dist. LEXIS 132781, at *4 (C.D. Cal. June 1, 2026) ("The 'good cause' standard is far less generous to the party seeking amendment than the 'liberal' Rule 15 standard.") (citation omitted). In other words, the focus of the inquiry is on the moving party's reason for seeking amendment. *See Morgal*, 284 F.R.D. at 459 (citing *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011)).

Even "[i]f good cause for amendment is shown pursuant to Rule 16(b), the movant must still satisfy the requirements of Rule 15." *Fireman's Fund*, 2026 U.S. Dist. LEXIS 132781, at *4. Generally, "[t]he [C]ourt should freely give leave [to amend] when justice

so requires." Fed. R. Civ. P. 15(a)(2). While there is a "strong policy permitting amendment," *Thomas-Lazear v. Fed. Bureau of Investigation*, 851 F.2d 1202, 1206 (9th Cir. 1988), this presumption is not conclusive. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989); *see also Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) ("Although [Rule 15] should be interpreted with 'extreme liberality,' . . . leave to amend is not to be granted automatically.").

"In assessing the propriety of a motion for leave to amend, [the Court] consider[s] five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003) (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). "In the absence of any apparent or declared reason—such as undue delay, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, *etc.*—the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (cleaned up).

## III. DISCUSSION.

The undercurrent of the instant dispute is whether Defendant has established both good cause under Rule 16 and the absence of undue delay and prejudice under Rule 15.

Defendant, in its Motion for Leave, solely addresses Rule 15's liberal pleading standard, failing to consider Rule 16's good cause standard. *See* (doc. 101 at 2–3.) Plaintiff, in response, asserts that Defendant fails to satisfy Rule 16's good cause requirement because Defendant was not diligent. See (doc. 114 at 4–5.) And, in any event, Plaintiff avers that Defendant's proposed counterclaim fails under Rule 15's standard because "[g]ranting the amendment would send this case back to square one and require the parties to start discovery anew, unduly delaying resolution of this matter and prejudicing [Plaintiff]." (*Id.* at 6–7.) Defendant, in its Reply, asserts that its proposed Counterclaim satisfies both Rule 16 and Rule 15's requirements. *See* (doc. 115 at 3–11.)

To address the instant matter, the Court shall first analyze whether Defendant has satisfied Rule 16's requirements before addressing whether Defendant's proposed

Counterclaim is appropriate under Rule 15. For the following reasons, the Court does not find that Defendant has satisfied either Rule 16's nor Rule 15's requirements.

**A. Good Cause**.

The Court's starting point here is whether Defendant has satisfied Rule 16's good cause standard. "For purposes of Fed. R. Civ. P. 16, the 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Lochridge v. City of Tacoma*, 315 F.R.D. 596, 599 (W.D. Wash. 2014); *Millenkamp v. Davisco Foods Int'l, Inc.*, 448 F. App'x 720, 721 (9th Cir. 2011) ("The party seeking amendment of a Rule 16 order must show 'good cause' for the untimely amendment—a standard which primarily considers the diligence of the party seeking the amendment.") (citation omitted). "If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Lochridge*, 315 F.R.D. at 599.

Courts within the Ninth Circuit apply the following three-part test to assess whether a party acted diligently in Rule 16's good cause inquiry:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order.

*Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1072–73 (D. Or. 2010) (citing *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999)).

The first and third factors are not in dispute here. As to the first factor, the Court is satisfied that, at the time of the parties' Rule 26(f) meeting and the filing of the Joint Case Management Report on September 15, 2025, (doc. 49), Defendant did not anticipate filing a counterclaim. (Doc. 115 at 6.) Hence, Defendant did not violate its "unflagging obligation to alert the Rule 16 scheduling judge of the nature and timing of such anticipated amendments in their status reports[.]" *Jackson*, 186 F.R.D. at 608 (cleaned up). As to the third factor, it appears that Defendant, when squarely presented with discovery supporting

possible counterclaims, moved to amend the scheduling order.

Although Defendant satisfied the first and third factors, the Court finds that it has failed to satisfy the second factor. Regarding the second factor, the Court does not find that Defendant's noncompliance with Rule 16 occurred because of "matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference." *Chao*, 709 F. Supp. 2d at 1072. The reason: because Defendant could have foreseen the possibility of counterclaims against Plaintiff OneAZ—as successor in interest to 1st Bank Yuma—had it investigated the basic circumstances of the Coury Defendants' check kiting at 1st Bank Yuma prior to the amendment deadline's expiration.

As this argument relates to the second diligence factor, the Court does not find availing Defendant's argument that Plaintiff's failure to hand over "emails and communications related to the claims at issue" that Plaintiff, in its "initial disclosure statement, dated September 19, 2025, . . . represented that they had in their possession, custody, or control" establishes that it could not have ascertained these facts until June of 2026. (Doc. 115 at 4, 9.) Specifically, the Court finds this claim unavailing for two reasons. First, Defendant, when faced with Plaintiff's alleged abject failure to provide initial disclosures, could have reasonably taken steps to timely obtain disclosure of these matters, such as attempting to meet and confer with Plaintiff or seeking Court assistance. However, Defendant failed to take any such steps for months.

Second, and in any event, Plaintiff's alleged failure to provide relevant matters alongside their initial disclosure statement does not excuse Defendant's counsel's failure to investigate the basic circumstances of the Coury Defendant's check kiting scheme as it related to 1st Bank Yuma—the circumstances underlying Plaintiff's claims against Defendant. By failing to investigate the underlying circumstances of claims involved in this action, Defendant has proven that it was not diligent in seeking to amend its initial pleadings to add counterclaims. *See Hernandez v. Select Portfolio Servicing, Inc.*, No. CV 15-1896 PA (AJWx), 2016 U.S. Dist. LEXIS 23296, at *9 (C.D. Cal. Feb. 24, 2016) ("The Court cannot look past Plaintiff's counsel's apparent failure to investigate the basic

circumstances of the loan origination process until approximately three months after the deadline to amend the pleadings[.]"); *see also Shangjin Chen v. JPMorgan Chase Bank, N.A.*, No. 2:23-cv-10874-SPG-AS, 2025 U.S. Dist. LEXIS 281403, at *10 (C.D. Cal. Sep. 17, 2025) ("Similarly, a party does not show good cause where it does not investigate the basic circumstances underlying its claims until after the deadline to amend has passed.") (Citation omitted); *Shuang Ying Zhang v. A-Z Realty & Inv. Corp.*, No. EDCV 19-887-KK, 2020 U.S. Dist. LEXIS 247499, at *9 (C.D. Cal. Dec. 23, 2020) (same); *Cervantes v. Zimmerman*, No. 17-cv-1230-BAS-NLS, 2019 U.S. Dist. LEXIS 39789, at *31–32 (S.D. Cal. Mar. 12, 2019) ("Any basic investigation by Plaintiffs' counsel into the events of the May 27, 2016 Trump rally should have occurred long ago such that these proposed amendments could and should have been raised in an earlier pleading.").

Moreover, the procedural history of this action evinces that Defendant merely overlooked the possibility of counterclaims. The instant action is over 19 months old. During this time, the parties engaged in multiple instances of dispositive motions practice and attempted good faith settlement negotiations. For most of this time, it appears that the parties conducted relatively minimal discovery, instead occupying their time with settlement negotiations and dispositive motions practice. Had Defendant engaged in more thorough discovery at an earlier stage of this litigation—or, at the very least, not overlooked the possibility of counterclaims—it reasonably could have moved to amend its pleadings before or shortly after the amendment deadline expired. However, Defendant failed to do so, leading the Court to conclude that it was careless, which "is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609; *Facebook, Inc. v. BrandTotal Ltd.*, No. 20-cv-07182-JCS, 2021 U.S. Dist. LEXIS 165209, at *13–14 (N.D. Cal. Aug. 31, 2021) ("If BrandTotal merely overlooked its potential defamation claim, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.") (citation omitted).

In sum,

> [t]he burden was upon [Defendant] to prosecute [its] case properly. [It] cannot blame [Plaintiff] for [its] failure to do so. The simple fact is that [its]

> attorneys filed pleadings and conducted discovery but failed to pay attention to the responses they received. That is precisely the kind of case management that Rule 16 is designed to eliminate. It is one of the reasons that the district courts have been forced to assume the burdens of case management themselves.

*Johnson*, 975 F.2d at 610 (cleaned up).

For the foregoing reasons, the Court finds that Defendant was not diligent in seeking to amend its pleadings. This alone is sufficient justification to deny Defendant's Motion for leave to amend.[4] *See Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 764 (9th Cir. 2017) ("If that party was not diligent, the inquiry should end.") (citation omitted).

**B. Undue Delay and Prejudice**.

Even assuming, *arguendo*, that Defendant satisfied Rule 16's good cause standard, it would still fail under Rule 15.

The focus of the Court's instant inquiry is whether Defendant's proposed amendment would prejudice Plaintiff and produce an undue delay in this action. Both of these are grounds sufficient to deny a motion for leave to amend under Rule 15. *See Jackson*, 902 F.2d at 1387 ("A trial court may deny such a motion if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit.") (citing *Foman*, 371 U.S. at 182); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) ("The district court may deny a motion for leave to amend if permitting an amendment would, among other things, cause an undue delay in the litigation or prejudice the opposing party.").

Here, Plaintiff contends that Defendant's proposed amendment would cause undue delay and would prejudice them as the opposing party. (Doc. 114 at 5–7.) Specifically,

---

[4] Based on the aforementioned findings, the Court need not address Plaintiff's Rule 16 prejudice argument in detail. *See* (doc. 114 at 4.) Suffice to say, for the reasons stated in *infra* section III.B, that Plaintiff would be prejudiced were the proposed Counterclaim permitted to proceed. "This prejudice to [Plaintiff], although not required under Rule 16(b), supplies an additional reason for denying the motion." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (noting that "a court may take into account any prejudice to the party opposing modification of the scheduling order" while evaluating a motion to amend under Rule 16).

Plaintiff asserts that allowing Defendant's proposed Counterclaim to proceed would "require the Court to reset all the scheduling order deadlines, . . . such as the deadline for conducting written discovery." (*Id.* at 6.) More to the point, Plaintiff asserts that the proposed Counterclaim would require additional discovery into a third financial institution, Arizona Federal Credit Union, would necessitate the parties retaining forensic accounts to test Defendant's "contention that its losses were caused exclusively by 1st Bank Yuma's conduct," and would require reopening of depositions that have already occurred. (*Id.*) Defendant, in response, asserts that "no substantial additional factual discovery will be required beyond the discovery already contemplated in this litigation." (Doc. 115 at 10.) And, in any event, Defendant avers that it "is not seeking to further extend factual discovery," so if Plaintiff "believes it would require additional discovery to assert its defenses, that is a subsequent issue that it must raise in a separate motion to amend the scheduling order." (*Id.*)

The Court agrees with Plaintiff here. Regarding prejudice, the Court notes that discovery, while not necessarily closing on the morrow, nevertheless closes in less than two weeks. *See* (doc. 99 at 2) (setting a September 25, 2026, deadline to complete fact discovery). Although Defendant avers that it will not engage in additional discovery, it is unrealistic to assume that no new discovery will be required on Defendant's four proposed counterclaims—three of which assert new legal arguments not already present in this action. *Compare* (doc. 1) *with* (doc. 102). Considering the current discovery deadline in this action and the realistic need to conduct additional discovery on counterclaims that "advance different legal theories and require proof of different facts," the Court concludes that Plaintiff would be unduly prejudiced by permitting Defendant to file its proposed Counterclaim. *See Jackson*, 902 F.2d at 1387 (citing *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("Putting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.") (citation omitted)); *see also Zivkovic*, 302 F.3d at 1087 ("The additional causes of action would have required further discovery, which was to

close five days after the motion to amend was filed. The requirement of additional discovery would have prejudiced Edison and delayed the proceedings. The district court, therefore, did not abuse its discretion when denying Zivkovic's motion to amend.").

Similarly, Defendant's proposed Counterclaim would cause undue delay in this action. First, as the Court just noted, allowing the proposed Counterclaim to proceed would require extending discovery at the eve of the deadline, thus delaying the action from proceeding. *See Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (noting that "[t]he district court did not abuse its discretion in denying the motion to amend" that was made "on the eve of the discovery deadline"). Moreover, given that "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading" is "[r]elevant to evaluating the delay issue," *Jackson*, 902 F.2d at 1388, the Court finds, for the reasons stated in *supra* section III.B, that allowing Defendant's proposed Counterclaim to proceed would create an undue delay.

Therefore, Defendant's proposed Counterclaim is not appropriate under Rule 15.

## IV. CONCLUSION.

For the foregoing reasons, the Court finds that Defendant's proposed Counterclaim fails under both Rule 16's and Rule 15's standards. Consequently, Defendant's Motion for Leave to File Counterclaim is denied.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Leave to File Counterclaim (doc. 101) is **DENIED**.

Dated this 15th day of September, 2026.

Honorable John Z. Boyle
United States Magistrate Judge