**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

OneAZ Credit Union,

Plaintiff,

v.

Southwest Heritage Bank, et al.,

Defendants.

No. CV-25-00252-PHX-JZB

**ORDER**

Pending before the Court are Plaintiff's "Motion for Entry of Default and Default Judgment Against Defendant Steve Coury Automotive Family, Inc. dba Steve Coury Ford" ("Motion for Default Judgment") (doc. 127) and "Motion for Summary Judgment Against Defendant Steven C. Coury" ("Motion for Summary Judgment") (doc. 133).[1] Considering that the time for Defendants Steve Coury Automotive Family, Inc. dba Steve Coury Ford ("Defendant SCAF") and Steven C. Coury ("Defendant Coury") to respond to the Motions has expired, and seeing no reason for delay, the Court shall address both Motions.

## I. SUMMARY OF CONCLUSIONS.

Plaintiff, in its Motion for Default Judgment, seeks entry of default judgment pursuant to Rule 55 against Defendant SCAF.[2] In its Motion for Summary Judgment, Plaintiff moves for summary judgment against Defendant Coury pursuant to Rule 56 of the

---

[1] All parties have voluntarily consented to magistrate judge jurisdiction in this action. *See* (doc. 75.)

[2] On November 5, 2026, the Court directed default be entered against Defendant SCAF "[b]ecause of its failure to comply with a court order and because Defendant SCAF, as a business entity, may not represent itself *pro se* pursuant to federal law." (Doc. 138.)

Federal Rules of Civil Procedure.[3] *See* (doc. 133 at 2.)

Given the *Frow* principle, the Court shall address the Motions jointly because, under the theory of Plaintiff's Complaint, Defendants SCAF's and Coury's liability "must be uniform."[4] *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1008 (N.D. Cal. 2001); *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552 (1872). Turning first to Plaintiff's Motion for Default Judgment, given that jurisdiction is proper, the *Eitel* factors weigh in favor of default judgment, and the requested relief is well established, the Court shall grant the Motion. Turning next to Plaintiff's Motion for Summary Judgment, seeing as Plaintiff is entitled to judgment as a matter of law on its claims, the Court shall grant the Motion.

## II. BACKGROUND.

For brevity's sake,[5] and given that the facts involved in both of Plaintiff's filings are substantially the same, the Court shall briefly lay out the pertinent facts as they relate to both Motions. *Compare* (doc. 134 at 1–5) *with* (doc. 127 at 3–5).

### A. Factual Background.

The following facts—given the Defendants' failure to respond—are undisputed or

---

[3] Plaintiff has not moved for entry of default and default judgment against Defendant Coury given that Defendant Coury—unlike Defendant SCAF—is an individual who may represent himself *pro se* in federal court. *See United States v. High Cnty. Broad. Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993).

[4] The prior entry of default judgment against Defendant Lincoln J. Moore (docs. 65–66) in this action complied with the *Frow* principle because the acts of Defendant Moore were sufficiently different than those of Defendants SCAF and Coury that it would not be "incongruous and unfair" to enter final judgment against Defendant Moore. *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001). In other words, Defendant Moore and Defendants SCAF and Coury do not have closely related defenses nor are they similarly situated based on the record. *See Kuei*, 194 F. Supp. 2d at 1006 (citing *In re First T.D.*, 253 F.3d at 532). Moreover, the Court does not find that an entry of judgment against Defendants SCAF and Coury while the case proceeds against Defendant Southwest Heritage Bank would violate the *Frow* principle because Defendant Southwest Heritage Bank is not implicated in any of the claims involving the other Defendants and its alleged acts are sufficiently different than the acts of Defendants SCAF, Coury, and Moore. *See, e.g.*, *Roul v. George*, No. 2:13-CV-01686-GMN, 2014 WL 1308607, at *8 (D. Nev. Mar. 10, 2014), (D. Nev. Mar. 28, 2014) (noting that it is proper to enter judgment against one defendant where the claims against the remaining defendants are different, whereby it would be unlikely that the entry of judgment against one defendant "would be inconsistent with a subsequent finding[s]" as to the other defendants), *report & recommendation adopted*, No. 2:13-CV-01686-GMN, 2014 WL 1305044.

[5] The Court endeavors for this order to be as short as a novella, not as long as a Homeric epic.

not subject to reasonable dispute.

This action pertains to an alleged "check-kiting scheme"[6] involving Defendants SCAF, Steven Coury, and Lincoln J. Moore ("Defendant Moore"). (Doc. 133 at 1); (doc. 127 at 2); *see generally* (doc. 1.)[7] This scheme involved Defendant SCAF's business checking account ending in 2221 (the "Account") maintained with 1st Bank Yuma—Plaintiff OneAZ Credit Union's predecessor-in-interest. *See* (doc. 134 at ¶ 1); *see also* (doc. 1 at 15); (doc. 83) (substituting "OneAZ Credit Union as plaintiff in this action" pursuant to Fed. R. Civ. P. 25(c)).

On May 21, 2024, Defendant Coury, proprietor of SCAF, delivered a letter (the "Authorization Letter") to 1st Bank Yuma authorizing Defendant Moore "to conduct and discuss business on behalf of SCAF and all accounts managed by Steven C. Coury at 1st Bank Yuma." (Doc. 134 at ¶ 2) (cleaned up); (doc. 134-1 at 7); (doc. 1 at 15.) The Authorization Letter also authorized Defendant Moore to "perform any necessary actions" with respect to the Account, and authorized 1st Bank Yuma to give Moore "access to all relevant accounts and information." (Doc. 134 at ¶ 4); (doc. 1 at 15.) The Authorization Letter was directly addressed to 1st Bank Yuma. (Doc. 134 at ¶ 3); (doc. 1 at 15.)

By delivering the Authorization Letter, Defendant Moore was appointed as Defendants SCAF and Coury's agent with respect to the Account. (Doc. 134 at ¶ 5); (doc. 1 at 15–16.) Moreover, the Authorization Letter gave Defendant Moore actual authority to act on Defendants SCAF and Coury's behalf regarding the Account and interactions with 1st Bank Yuma. (Doc. 134 at ¶ 5); (doc. 1 at 16.)

On October 10, 2024, Defendant Moore deposited seven checks into the Account which were drawn upon Defendant SCAF's account ending in 9893 (the "SWHB

---

6 "Check kiting is a scheme designed to separate the bank from its money by tricking it into inflating bank balances and honoring checks drawn against accounts with insufficient funds." *United States v. Frydenlund*, 990 F.2d 822, 824 (5th Cir. 1993) (cleaned up); *Williams v. United States*, 458 U.S. 279, 281 n.1 (1982) (noting that "[i]n effect, the check kiter" profits off the scheme by "tak[ing] advantage of the several-day period required for the transmittal, processing, and payment of checks from accounts in different banks").

7 Given that a motion for default judgment is predicated upon the pleadings—*i.e.*, Plaintiff's Complaint—the Court will cite both Plaintiff's statement of facts and its Complaint in the recitation of the factual background.

Account") maintained at Southwest Heritage Bank ("SWHB").[8] (Doc. 134 at ¶¶ 6–8); (doc. 1 at 16.) Those checks were: (1) a check ending in 8021 for $85,769; (2) a check ending in 8022 for $89,781; (3) a check ending in 8023 for $88,644; (4) a check ending in 8024 for $96,769; (5) a check ending in 8025 for $94,415; (6) a check ending in 8026 for $79,554; and (7) a check ending in 8027 for $65,046. (Doc. 134 at ¶ 6); (doc. 1 at 16); (doc. 134-1 at 9–22.) In total, the amount deposited was $599,978.00. (Doc. 134 at ¶ 7); (doc. 1 at 17.) These checks were signed by Defendant Moore and made payable to Defendant SCAF. (Doc. 134 at ¶ 7); (doc. 1 at 17.) At the time Defendant Moore deposited the seven checks, Defendant SCAF's SWHB Account only had $78,637.83, which was insufficient to cover the seven checks. (Doc. 134 at ¶ 9.)

1st Bank Yuma did not automatically accept the seven checks. (*Id.* at ¶ 10); (doc. 1 at 17.) Rather, it placed a seven business-day hold on the checks, which was slated to expire on October 22, 2024. (Doc. 134 at ¶¶ 10–11); (doc. 1 at 17.)

On October 11, 2024, Defendant Moore provided 1st Bank Yuma with a letter on SWHB letterhead and signed by a SWHB banker stating that the seven checks had cleared SWHB. (Doc. 134 at ¶¶ 12–13); (doc. 1 at 17.) After receiving this letter, a 1st Bank Yuma assistant branch manager called the SWHB banker in question, who confirmed that the checks had cleared SWHB as of October 11, 2024. (Doc. 134 at ¶ 14); (doc. 1 at 17.)

Relying on the letter from SWHB and the confirmation from the SWHB banker, 1st Bank Yuma released its hold on the seven checks and made the funds available as of October 11, 2024. (Doc. 134 at ¶ 15); (doc. 1 at 17.) After releasing the hold on the checks, 1st Bank Yuma honored and paid out the checks to Defendant Moore on the same day, leaving a balance of $1,006.27 in the Account. (Doc. 134 at ¶ 16); (doc. 1 at 17.) Thereafter, 1st Bank Yuma closed the Account on October 11, 2024, and issued a cashier's check in the amount of $1,006.27. (Doc. 134 at ¶ 17); (doc. 1 at 18.)

On October 16–17, 2024, SWHB returned the seven checks for stop payment and charged back the total amount of those checks. (Doc. 134 at ¶¶ 18–19); (doc. 1 at 18.)

[8] This Order shall not impact SWHB's status as a Defendant in this action.

SWHB did not honor the seven checks because of stop payment directives Defendant Moore placed on the checks. (Doc. 134 at ¶ 20); (doc. 1 at 18.)

Given the chargebacks, 1st Bank Yuma reopened the Account and deposited the $1,006.27 cashier's check into the Account. (Doc. 134 at ¶ 21); (doc. 1 at 18.) Taking the deposited cashier's check into account, the Account was overdrawn by $598,971.73. (Doc. 134 at ¶ 22); (doc. 1 at 18.) 1st Bank Yuma thereafter returned the seven checks to SWHB through the Federal Reserve as a late claim. (Doc. 134 at ¶ 23); (doc. 1 at 18.)

On October 22, 2024, the Federal Reserve issued 1st Bank Yuma a provisional credit in the full amount of the seven checks—*i.e.*, $599,978.00. (Doc. 134 at ¶ 24); (doc. 1 at 18.)

On October 28–29, 2024, SWHB rejected 1st Bank Yuma's late claims on the seven checks, requiring 1st Bank Yuma to return the $599,978.00 of the provisional credit to the Federal Reserve. (Doc. 134 at ¶¶ 25–26); (doc. 1 at 18–19.)

After crediting three other deposits made by Defendant SCAF, the Account's overdrawn total was $422,682.86. (Doc. 134 at ¶ 27); (doc. 1 at 19.) Defendants SCAF, Coury, and Moore have not resolved the Account's negative $422,682.86 balance. (Doc. 134 at ¶¶ 28–29); (doc. 1 at 19.)

**B. Procedural Background**.

Plaintiff OneAZ Credit Union—then 1st Bank Yuma—initiated this action on January 3, 2025, when it filed its eleven-count Complaint in the Maricopa County Superior Court. (Doc. 1 at 31.) This action was removed by SWHB to federal court on January 27, 2025. *See* (*id.* at 3.)

Following removal, Defendants SCAF and Coury answered Plaintiff's Complaint on February 20, 2025. (Docs. 13–14.) Both Defendant SCAF and Coury were represented by counsel from the filing of their Answers to August 5, 2026. *See* (doc. 111.) Between this action's removal on January 27, 2025, and August 5, 2026, Senior United States District Judge Stephen M. McNamee entered default judgment against Defendant Moore on January 30, 2026, following this Court's January 7, 2026, Report and Recommendation.

*See* (docs. 65–67.) Thereafter, on March 2, 2026, this Court gained perfect consent in this action, permitting the Court to enter dispositive orders in this action without the need of filing report and recommendations. *See* (doc. 75.)

On August 5, 2026, following a motion to withdraw filed by Defendants SCAF and Coury's counsel, the Court granted counsel's motion. (Doc. 111.) In the Order, the Court ordered Defendant SCAF to obtain new counsel on or before September 4, 2026. (*Id.* at 2.)

Neither Defendant SCAF nor Defendant Coury have obtained new counsel by the September 4, 2026, deadline. Nor has either Defendant moved for an extension of time to obtain new counsel. Consequently, the deadline for Defendants SCAF and Coury to obtain replacement counsel is, to date, over two-months expired.

Given this, Plaintiff filed its Motion for Default Judgment against Defendant SCAF on October 5, 2026, and its Motion for Summary Judgment against Defendant Coury on October 16, 2026. (Docs. 127, 133.) Following Plaintiff's Motion for Summary Judgment, this Court issued a *Rand*-type order to Defendant Coury on October 19, 2026, setting a November 16, 2026, deadline to file a response. (doc. 135.) Additionally, given that Defendant SCAF did not respond to Plaintiff's Motion for Default Judgment by the LRCiv 7.2(c) deadline, this Court issued an Order to Defendant SCAF directing it to provide notice on or before November 3, 2026, why entry of default and default judgment should not be entered against it. (Doc. 137.)

On November 5, 2026, the Court directed the Clerk of Court to enter default against Defendant SCAF. (Doc. 138.) The Clerk of Court entered default against Defendant SCAF on the same day. (Doc. 139.)

To date, Defendants SCAF and Coury have not responded to either Motion, and the time for doing so has passed.

## III. Legal Standards.

### A. Default Judgment.

Rule 55 states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Court's "starting point is the general rule that default judgments are ordinarily disfavored." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In considering default judgment against parties that have "failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

A default judgment entered by a district court devoid of personal or subject matter jurisdiction is void. *Id.* A court has personal jurisdiction over a party where that party has sufficient "minimum contacts" with the territory "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A court has federal-question subject matter jurisdiction where, "on the face of the plaintiff's properly pleaded complaint," the civil action in question "aris[es] under the Constitution, laws, or treaties of the United States." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 392 n.6 (1987) (quoting 28 U.S.C. § 1331).

After personal and subject matter jurisdiction have been established, the court must consider whether default judgment is proper under the *Eitel* factors. *See Eitel*, 782 F.2d at 1471–72. The *Eitel* factors are:

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*

In applying the *Eitel* factors, the Court notes that, "for default judgment purposes[,] . . . 'well-pled allegations in the complaint regarding liability are deemed true.'" *Ariz. Bd.*

*of Regents v. Doe*, 555 F. Supp. 3d 805, 815 (D. Ariz. 2021) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)), *aff'd sub nom. Ariz. Bd. of Regents for and on behalf of Ariz. State U. v. Doe*, No. 21-16525, 2022 WL 1514649 (9th Cir. May 13, 2022). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

**B. Summary Judgment**.

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The court views the evidence in the light most favorable to the non-moving party to determine if there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[s]ummary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors*, 771 F.3d at 1125 (citation omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation omitted). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 77 U.S. at 248. Evidence that "is merely colorable . . . or is not significantly probative" will not preclude summary judgment. *Id.* at 249.

## IV. DISCUSSION.

The Court shall address each of Plaintiff's Motions in turn, beginning with its Motion for Default Judgment.

### A. Motion for Default Judgment.

Given the procedural record before the Court, Plaintiff's entitlement to default judgment is not crystalline. To determine whether Plaintiff is entitled to default judgment against Defendant SCAF, the Court must address three matters. First, the Court must address whether it has jurisdiction over Defendant SCAF. Second, the Court shall address Plaintiff's entitlement to default judgment against Defendant SCAF. Finally, the Court shall address whether Plaintiff has proven the amount of damages it seeks.

#### *1. Jurisdiction*.

For the following reasons, the Court finds that: (1) subject-matter jurisdiction is proper here; (2) the Court has personal jurisdiction over Defendant SCAF; and (3) venue is proper here.

##### *i. Subject-Matter Jurisdiction*.

Plaintiff asserts that the Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1441, because, in its Complaint, it alleges that Defendant SWHB breached a warranty owed to Plaintiff under the Expedited Funds Availability Act ("EFAA") (12 U.S.C. §§ 4001 *et seq.*). (Doc. 127 at 5–6.) While Plaintiff does not allege any federal claims against Defendant SCAF, Plaintiff alleges that the Court has supplemental jurisdiction over its state law claims under 28 U.S.C. § 1367. (*Id.* at 6.)

The Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331 because of the EFAA claim. *See* 28 U.S.C. § 1331. The Court finds that it has supplemental jurisdiction over the claims Defendant SCAF under 28 U.S.C. § 1367 because the state law claims are "so related to claims in the action within such original jurisdiction that they form

part of the same case or controversy[.]" 28 U.S.C. § 1367(a); *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025) ("The federal court has supplemental jurisdiction over state-law claims sharing a 'common nucleus of operative fact' with the federal-law ones.") (citation omitted).

*ii. Personal Jurisdiction.*

The next issue is whether this Court has personal jurisdiction over Defendant SCAF. The Due Process Clause requires that, for a court to exercise personal jurisdiction over a defendant, that defendant must have sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (cleaned up). Here, Defendant SCAF is an Arizona corporation with its principal place of business in Star Valley, AZ. *See* (doc. 127); *compare* (doc. 1 at 15 ¶ 3) *with* (doc. 14 at ¶ 3). Given that Defendant SCAF is an Arizona corporation with its principal place of business located within the state, it is "at home" in Arizona. *See Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). Thus, this Court has personal jurisdiction over Defendant SCAF.

*iii. Venue.*

Venue is proper in the present case given that Defendant SCAF's principal place of business is in Arizona and because a substantial part of the events giving rise to this action occurred in Arizona. *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55–56 (2013) (noting that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated") (citing 28 U.S.C. § 1391(b)(1)).

***2. Entitlement to Default Judgment*.**

Given that the Court has jurisdiction here, it shall proceed to address the Plaintiff's entitlement to default judgment against Defendant SCAF. In addressing this matter, the Court shall apply the *Eitel* factors to Plaintiff's pleadings.

*i. Possibility of Prejudice to Plaintiff.*

Under the first *Eitel* factor, "[t]he Court first considers whether the plaintiff will suffer prejudice if default judgment is not entered." *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006). Plaintiff opines that "in the absence of default judgment, [it] would be without any recourse for recovery against [Defendant] SCAF." (Doc. 127 at 10.) Given that Plaintiff "would suffer prejudice if its motion for default judgment were denied because it would be 'without other recourse for recovery'" against Defendant SCAF, the Court finds that the first *Eitel* factor weighs in favor of default judgment. *See Streeter*, 438 F. Supp. 2d at 1070 (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).

*ii. Merits of Plaintiff's Claims and Sufficiency of the Complaint.*

"The second and third *Eitel* factors consider the merits of the plaintiff's claims and the sufficiency of the complaint." *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 941 (D. Ariz. 2013). Where a plaintiff's complaint states a claim upon which they may recover, the second and third factors "weigh in favor of default judgment." *Joe Hand Promotions Inc. v. Alvarez*, No. CV-23-01924-PHX-DJH, 2025 WL 1707915, at *2 (D. Ariz. June 18, 2025) (citing *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010)). "'Upon entry of a default judgment, facts alleged to establish liability are binding upon the defaulting party,' but 'facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment.'" *Wang v. Gold Mantis Constr. Decoration* (CNMI), LLC, 705 F. Supp. 3d 1190, 1202 (D.N. Mar. Is. 2021) (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Plaintiff, in its Complaint, asserts six state law claims against Defendant SCAF: "(1) liability under Arizona's bad checks statute, A.R.S. § 12-671; (2) drawer liability under A.R.S. § 47-3414; (3) indorser liability under A.R.S. § 47-3415; (4) breach of contract; (5) breach of the covenant of good faith and fair dealing; and, in the alternative, (6) unjust enrichment." *See* (doc. 127 at 10); *see also* (doc. 1 at 24–31.) Before the Court addresses

Plaintiff's claims, it must first address whether Defendant SCAF and Defendant Moore were in a principal-agent relationship given that Plaintiff's first three claims against [Defendant] SCAF are premised on principal-agent liability. *See* (doc. 127 at 10.)

a. Principal-Agent Relationship.

Defendant SCAF and Defendant Moore were in a principal-agent relationship, meaning that Defendant Moore's acts within the scope of his authority, actual or apparent, are binding upon Defendant SCAF.

As the Arizona Supreme Court noted nearly 75 years ago, "[a]gency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other so to act." *Valley Nat'l Bank of Phx. v. Milmoe*, 248 P.2d 740, 743 (Ariz. 1952). That is, "agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *Ruesga v. Kindred Nursing Ctrs., LLC*, 161 P.3d 1253, 1261 (Ariz. Ct. App. 2007) (quoting Restatement (Third) of Agency § 1.01 (2006)).

"It is elementary, of course, that a corporation acts only through its agents, and it is also beyond question that an agent may only bind a principal within the scope of his authority, actual or apparent." *Lois Grunow Mem'l Clinic v. Davis*, 66 P.2d 238, 241 (Ariz. 1937). "Actual authority may be proved by direct evidence of express contract of agency between the principal and agent or by proof of facts implying such contract or the ratification thereof." *Ruesga*, 161 P.3d at 1261; *Premium Cigars Int'l, Ltd. v. Farmer-Butler-Leavitt Ins. Agency*, 96 P.3d 555, 565 (Ariz. Ct. App. 2004) (noting that "[i]f there is evidence that the principal has delegated authority by oral or written words which authorize him to do a certain act or series of acts, then the authority of the agent is express"—*i.e.*, actual), *abrogated on other grounds by Webb v. Gittlen*, 174 P.3d 275 (Ariz. 2008). "In contrast, apparent authority exists when 'the principal has intentionally or inadvertently induced third persons to believe that such a person was its agent although no

actual or express authority was conferred on him as agent.'" *Ruesga*, 161 P.3d at 1261 (quoting *Premium Cigars Int'l*, 96 P.3d at 565).

Based upon Plaintiff's Complaint and the exhibits attached thereto, it is clear that Defendants SCAF and Moore were in a principal-agency relationship. This is because Defendant SCAF's Authorization Letter expressly authorized Defendant Moore to act upon Defendant SCAF's behalf regarding transactions and interactions with 1st Bank Yuma. *See* (doc. 1 at 45) (containing the Authorization Letter which states that "Lincoln J Moore is appointed as [SCAF's] representative and is authorized to perform any necessary actions, including but not limited to making inquiries, accessing account information, signing documents, and conducting transactions"). Given this express, written authorization, Defendant Moore had actual authority conduct transactions with 1st Bank Yuma on Defendant SCAF's behalf.

Now, Defendants SCAF and Moore' principal-agency relationship begs a follow-up question: whether Defendant SCAF may be bound by Defendant Moore's acts of executing checks and withdrawing funds on Defendant SCAF's behalf. In general, "an agent's acts bind the agent's principal." *Queiroz v. Harvey*, 205 P.3d 1120, 1122 (Ariz. 2009). Thus, under ordinary principles of agency law, Defendant Moore's transactions were, in fact, binding upon Defendant SCAF. *See id.* Moreover, under Arizona's version of the Uniform Commercial Code ("U.C.C."), the Arizona Revised Statutes that:

> [i]f a person acting, or purporting to act, as a representative signs an instrument[9] by signing either the name of the represented person or the name of the signer, the represented person is bound by the signature to the same extent the represented person would be bound if the signature were on a simple contract. If the represented person is bound, the signature of the representative is the 'authorized signature of the represented person' and the represented person is liable on the instrument, whether or not identified in the instrument.

A.R.S. § 47-3402(A).

Because, Defendant Moore, who was Defendant SCAF's authorized agent, signed

[9] A bank check falls under the banner of an "instrument." *Cf. Koss Corp. v. Am. Exp. Co.*, 309 P.3d 898, 911 (Ariz. Ct. App. 2013).

the seven checks in question, *see* (doc. 1 at 51), Defendant SCAF was bound by Defendant Moore's signature to the same extent that it would be bound if it had signed the seven checks.[10] *See* A.R.S. § 47-3402(A); *see also In re Gonzalez*, No. 4:07-BK-02459JMM, 2008 WL 5329959, at *2 (Bankr. D. Ariz. Dec. 17, 2008) (noting, in the context of an application signed on the company's behalf by an agent, that "[c]learly, the [c]ompany is liable, based on ordinary contract and agency law principles," including A.R.S. § 47-3402(A)); *accord United States v. Hunt*, 456 F.3d 1255, 1262 (10th Cir. 2006) (noting that, with regard to U.C.C. § 3-402—which A.R.S. § 47-3402 is based on—"that the account holder, not the bank, is liable for a check signed by an agent with general check-writing authority who exceeds his contractual authority in writing that particular check").

For the foregoing reasons, Defendants SCAF and Moore were in a principal-agent relationship, wherein the acts of Defendant Moore bound Defendant SCAF.

b. Arizona Bad Check Statute.

Plaintiff's first claim against Defendant SCAF is predicated upon Arizona's Bad Check statute, A.R.S. § 12-671. (Doc. 127 at 11.) A person is liable for violating Arizona's bad check statute where they:

> with intent to defraud, makes, draws, utters or delivers to another person or persons a check or draft on a bank or depositary for payment of money, knowing at the time of such making, drawing, uttering or delivery, that he or his principal does not have an account or does not have sufficient funds in, or credit with, such bank or depositary to meet the check or draft in full upon presentation, shall be liable to the holder of such check or draft for twice the amount of such check or draft or fifty dollars, whichever is greater, together with costs and reasonable attorney's fees as allowed by the court on the basis of time and effort expended by such attorney on behalf of plaintiff.

A.R.S. § 12-671(A).

---

[10] The prior entry of default judgment against Defendant Moore, (doc. 66), based on his individual liable on the checks does not preclude a finding of liability on the part of Defendant SCAF because it is ambiguous whom liability for the checks fell upon. *See In re Gonzalez*, No. 4:07-BK-02459JMM, 2008 WL 5329959, at *2 (Bankr. D. Ariz. Dec. 17, 2008) (noting that unless the instruments were unambiguous upon whom liability fell, the agent and the corporation may both be liable on the instrument) (citing A.R.S. § 47-3402(B)(1)–(2)).

Prima facie evidence of intent to defraud results where the "drawer did not have sufficient funds with the bank or depositary, and that he failed within twelve days after receiving notice of nonpayment or dishonor to pay the check[s.]" A.R.S. § 12-671(C).

The Court finds that Plaintiff has stated a bad check claim upon which relief may be granted. Here, Defendant Moore was an authorized agent for Defendant SCAF with actual authority to conduct transactions on Defendant SCAF's behalf. *See supra* section IV.A.2.ii.a. Because Defendant Moore signed the checks himself, he bound Defendant SCAF to transactions regarding the checks. *See id.* Thus, when he deposited the seven checks and subsequently withdrew the funds from Defendant SCAF's Account, Defendant SCAF was bound by his conduct. *See* (doc. 1 at 18.) Here, that conduct was the withdrawal of funds that Defendant SCAF did not have. *See id.* In fact, even after crediting the three checks deposited by Defendant SCAF into the Account, the Account remained in the negative to the tune of $422,682.86. *See* (*id.* at 19.)

Based upon the abovementioned facts, there is prima facie evidence of an intent to defraud in violation of the statute, even considering that Defendant Moore was the one who signed the seven checks at issue. *See* A.R.S. § 12-671(C); *see also Harmon v. RAR Enters. Inc.*, No. CV 10-01813-PHX-FJM, 2011 WL 5978483, at *2 (D. Ariz. Nov. 30, 2011); *e.g.*, *Wells Fargo Bank NA v. Worldwide Car Co. LLC*, No. CV-21-01348-PHX-DJH, 2022 WL 2753776, at *1–2 (D. Ariz. July 14, 2022) (finding defendant liable under A.R.S. § 12-671(A) where it had issued a check that, when presented to defendant's bank for payment, "was returned unpaid for insufficient funds"). Consequently, Plaintiff has stated an Arizona Bad Check statute claim upon which relief may be granted.

c. <u>Drawer Liability</u>.

Plaintiff's second claim against Defendant SCAF is based on Arizona's Drawer Liability statute, A.R.S. § 47-3414. (Doc. 127 at 12–13.) Under Arizona's Drawer Liability statute:

> If an unaccepted draft is dishonored, the drawer is obliged to pay the draft according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder, or if the drawer signed an incomplete

> instrument, according to its terms when completed, to the extent stated in §§ 47-3115 and 47-3407. The obligation is owed to a person entitled to enforce the draft or to an indorser who paid the draft under § 47-3415.

A.R.S. § 47-3414(B).

Acceptance of a draft is defined as:

> the drawee's signed agreement to pay a draft as presented. It must be written on the draft and may consist of the drawee's signature alone. Acceptance may be made at any time and becomes effective when notification pursuant to instructions is given or the accepted draft is delivered for the purpose of giving rights on the acceptance to any person.

A.R.S. § 47-3409(A).

"If a draft is accepted by a bank, the drawer is discharged, regardless of when or by whom acceptance was obtained." A.R.S. § 47-3414(C).

Now, there is a dearth of case law addressing the interpretation and application of A.R.S. § 47-3414. But, there exists a catalog of decisions addressing U.C.C. § 3-414, which A.R.S. § 47-3414 is based upon. *See Nationstar Mortg. LLC v. Magnum Fin. LLC*, No. 1 CA-CV 18-0518, 2019 WL 6606081, at *3 n.6 (Ariz. Ct. App. Dec. 5, 2019). Given that the U.C.C. supplements the terms of the Arizona Revised Statutes, the Court may rely upon these decisions here. *See id.*

From the catalog of decisions addressing U.C.C. § 3-414, the Court finds the decision in *Wells Fargo Bank NA v. Ferruggio Ins. Servs. of LA Inc.* insightful. 358 F. Supp. 3d 887 (D. Ariz. 2019). In that case, the court was confronted with a similar factual background that is involved here, namely: (a) an employee for the defendants deposited a check into the defendants' account; (b) there were no signs of forgery; (c) funds were withdrawn based on that check; and (d) after the checks were deposited, a stop payment directive was issued from the defendants rendering the account overdrawn. *See id.* at 888. Based upon these facts, the court found the defendants liable for the unaccepted draft because the plaintiff had established that it was the holder of the check, entitling it to enforce said check. *See id.* at 891–95.

Similar to *Ferruggio*, the Court finds that Plaintiff has met its burden here. First, given the express principal-agency relationship between SCAF and Moore, *see supra* section IV.A.2.ii.a, and considering Defendant SCAF's failure to respond, there is no dispute that the checks were authorized by Defendant SCAF. *Cf.* A.R.S. § 47-3402(A). Second, the act of depositing the checks at 1st Bank Yuma rendered 1st Bank Yuma as the holder of the instruments. *See Ferrugio*, 358 F. Supp. 3d at 890 ("If a customer delivers an item to a depositary bank for collection the depositary bank becomes a holder of the item.") (cleaned up) (quoting U.C.C. § 4-205). Thus, Plaintiff was entitled to enforce the checks against the drawer—that is, Defendant SCAF. *See Ferrugio*, 358 F. Supp. 3d at 890; *see also* A.R.S. § 47-3414(B). Third, Defendant Moore's issuance of a stop payment directive rendered these seven checks unaccepted[11] and dishonored.

Given the following, Plaintiff has established that it was the holder of seven dishonored and unaccepted checks, entitling it to enforce those checks against Defendant SCAF. *See* A.R.S. § 47-3414(B). Therefore, Plaintiff has stated a claim under Arizona's Drawer Liability statute upon which relief may be granted.

d. Indorser Liability.

Plaintiff's third claim against Defendant SCAF is a claim under Arizona's Indorser Liability statute, A.R.S. § 47-3415. (Doc. 127 at 13.) Under Arizona's Indorser Liability statute:

> if an instrument is dishonored, an indorser is obliged to pay the amount due on the instrument according to the terms of the instrument at the time it was indorsed[.] The obligation of the indorser is owed to a person entitled to enforce the instrument or to a subsequent indorser who paid the instrument under this section.

A.R.S. § 47-3415(A).

---

[11] "In the case of a check, the acceptance is known as 'certification,' formerly a rubber stamp on the face side of the check with the date and the signature of the certifying officer, but nowadays most often done by the bank with a protectograph machine (which creates a perforated embossing of the check amount and the date of certification accompanied by the legend, 'Certified' on the face side of the check, together with the signature of the certifying officer)." 6 ARIZ. LEGAL FORMS, COMM. TRANSACTIONS § 3.19 (2d ed.). Given that the checks were not certified, *see* (doc. 127 at 35–48), they were not accepted.

Plaintiff has stated a claim upon which relief may be granted. In short, (a) Defendant SCAF was the indorser of the seven check by virtue of its agent's actions, (b) the checks were dishonored following the stop payment directive, (c) Plaintiff's predecessor-in-interest was entitled to enforce the checks, *see Ferrugio*, 358 F. Supp. 3d at 890, thus (d) Defendant SCAF is liable for the seven checks. Therefore, Plaintiff has stated a sufficient claim for Indorser Liability under Arizona law.

e. <u>Breach of Contract</u>.

Plaintiff's fourth claim is for breach of contract. *See* (doc. 127 at 14.) "To state a cause of action for breach of contract, the Plaintiff must plead facts alleging (1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff." *Little v. Grand Canyon Univ.*, 516 F. Supp. 3d 958, 964 (D. Ariz. 2021) (citation omitted).

Plaintiff has met its burden in establishing breach of contract here. First, there was a contract in existence between Plaintiff and Defendant SCAF. *See* Restatement (Second) of Contracts § 6 (1981) (noting that negotiable instruments, such as checks, are a "type[] of contract[]" that is "subject in some respects to special rules that depend on their formal characteristics and differ from those governing contracts in general"); *see also Cornell v. Desert Fin. Credit Union*, 524 P.3d 1133, 1139 (Ariz. 2023) ("Notably, we have followed the Restatement of Contracts in interpreting and enforcing standardized contracts."). Second, Plaintiff is not barred from recovery here given that the check was dishonored and unaccepted due to the stop payment directive. *See* A.R.S. § 47-3414(C) ("If a draft is accepted by a bank, the drawer is discharged, regardless of when or by whom acceptance was obtained"); *see also Prevo v. McGinnis*, 689 P.2d 557, 561 (Ariz. Ct. App. 1984) (noting that once "the check is paid, or the check is accepted at the bank at which it is made payable," the debt is extinguished"). Third, by virtue of the stop payment directive and Defendant SCAF's failure to reimburse Plaintiff for the face value of the checks, Defendant SCAF has breached the contract. Finally, Defendant SCAF's breach resulted in damages to Plaintiff equal to the amount the Account was overdrawn—*i.e.*, $422,682.86. (Doc. 1 at

19.)

For the foregoing reasons, Plaintiff has established a breach of contract claim upon which relief may be granted.

f. Breach of the Covenant of Good Faith and Fair Dealing.

Plaintiff's fifth claim for relief against Defendant SCAF is a claim for breach of the covenant of good faith and fair dealings. *See* (doc. 127 at 14.) "Under Arizona law, the covenant of good faith and fair dealing is implied in every contract, and the 'duty arises by virtue of a contractual relationship.'" *Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055, 1070 (D. Ariz. 2011) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986) (en banc)). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Silving*, 800 F. Supp. 2d at 1070–71 (citation omitted). "Either party can breach the covenant of good faith and fair dealing by exercising discretion under the contract in such a way as to deny the other party a reasonably expected benefit of the bargain." *Snyder v. HSBC Bank, USA, N.A.*, 873 F. Supp. 2d 1139, 1152 (D. Ariz. 2012).

The burden of proof required for a claim of breach of the implied covenant of good faith depends "on whether the claim sounds in tort or in contract." *Id.* at 1152. "A party may bring an action in tort claiming damages for breach of the implied covenant of good faith, but only where there is a special relationship between the parties[.]" *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 29 (Ariz. 2002) (en banc). "When the remedy for breach of the covenant sounds in contract, it is not necessary for the complaining party to establish a special relationship." *Id.*

Plaintiff does not state whether their breach of the implied covenant of good faith claim sounds in tort or in contract. *See* (doc. 1 at 29.) However, given that Plaintiff does not seek damages sounding in tort—such as punitive damages—under its implied covenant of good faith claim, suffice to say that Plaintiff's claim sounds in contract. *Cf. Snyder*, 873 F. Supp. 2d at 1152 ("Count Four of the Complaint does not specify whether the bad faith

allegation arises in tort or contract, but it does request an award of punitive damages in paragraph 49, which is consistent with the tort claim of bad faith.”).

The Court finds that Plaintiff has established a sufficient breach of the implied covenant of good faith claim because: (a) of the lower burden of proof for Plaintiff’s claim; (b) the checks in question are contracts under Arizona law, *see supra* section IV.A.2.ii.g; and (c) the failure to reimburse the value of the checks equates an act impairing Plaintiff’s right to receive the benefits which flow from the contract. Therefore, Plaintiff has stated a breach of the implied covenant of good faith claim upon which relief may be granted.

g. Unjust Enrichment.

Plaintiff’s sixth claim for relief, pleaded in the alternative, is a claim for unjust enrichment. *See* (doc. 127 at 15.) “A claim of unjust enrichment under Arizona law has five elements: ‘(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.’” *Perez v. First Am. Title Ins. Co.*, 810 F. Supp. 2d 986, 991 (D. Ariz. 2011) (quoting *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011)).”

The court need not address the instant claim in detail. In short, because “[P]laintiff possesses a remedy based on breach of contract, [P]laintiff is precluded from recovering on a claim of unjust enrichment.” *See Kamin Health LLC v. 4D Glob. LLC*, No. CV-23-01491-PHX-DLR, 2024 WL 1796085, at *3 (D. Ariz. Apr. 25, 2024).

*iii. Amount at Stake.*

“For the fourth *Eitel* factor, ‘the court must consider the amount of money at stake in relation to the seriousness of Defendant’s conduct.’” *Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006) (quoting *PepsiCo*, 238 F. Supp. 2d at 1176). This factor requires the Court to “assess whether the recovery sought is proportional to the harm caused by defendant’s conduct.” *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

“Plaintiff seeks recovery of twice the amount of the Checks ($1,199,956.00)

pursuant to A.R.S. § 12-671(A).” (Doc. 127 at 16.) In support of these requests, Plaintiff provides a declaration and copies of the seven checks—which collectively total $599,978.00. (*Id.* at 29–48.) These exhibits support Plaintiff's underlying claims in this action. Moreover, these exhibits substantiate the reasonableness of Plaintiff's request. In particular, the Court notes that, under A.R.S. § 12-671(A), Plaintiff may recover “twice the amount of such check . . .or fifty dollars, whichever is greater[.]” A.R.S. § 12-671(A). Here, the face value of the checks—*i.e.*, $599,978.00—multiplied by two equates $1,199,956.00. Although it is true that Defendant SCAF did deposit three checks that reduced the negative balance of the Account to $422,682.86, the Court need not concern itself with the negative Account balance here. That is because A.R.S. § 12-671(A) explicitly sets the value of the checks at issue as amount to double, not the total amount an account is overdrawn. See id. (noting that an entity “shall be liable to the holder of such check or draft for ***twice the amount of such check***”) (emphasis added).

“As the Arizona legislature has found that a suitable award for a bad check includes damages for twice the amount of the check, . . . the Court finds the money at stake [here] is not an inappropriate amount.” *Worldwide Car Co.*, 2022 WL 2753776, at *2; *see, e.g.*, *In re Mee*, No. 03-17624-PHX-SSC, 2005 WL 8245440, at *10 (Bankr. D. Ariz. Aug. 18, 2005) (finding a request for damages in the amount of $20,000.00, which was exactly double the face value of an earnest money check deposited by the defendant, reasonable pursuant to A.R.S. § 12-671(a)). Thus, the recovery sought by Plaintiff “proportional to the harm caused by [D]efendant's conduct,” *Landstar Ranger*, 725 F. Supp. 2d at 921, resulting in the fourth *Eitel* factor favoring Plaintiff.

*iv. Possibility of Dispute.*

“The fifth *Eitel* factor considers the possibility that material facts may be in dispute.” *Landstar Ranger*, 725 F. Supp. 2d at 921 (citations omitted). “Here, because default has been entered against Defendant[,] the Court takes the well-pleaded factual allegations in the complaint as true[,] except insofar as they pertain to the amount of Plaintiff's damages[.]” *Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Reyes Eng'g*

*Contractors, Inc.*, 807 F. Supp. 3d 1047, 1056 (C.D. Cal. 2025) (cleaned up). Although Defendant SCAF did file an Answer to Plaintiff's Complaint, its failure to defend itself in this action since August 5, 2026, paired with the documentary evidence in the record establishes that "no genuine dispute of material facts would preclude granting Plaintiff['s] motion." *PepsiCo*, 238 F. Supp. 2d at 1177. Thus, the fifth *Eitel* factor favors Plaintiff.

*v. Possibility of Excusable Neglect.*

"The sixth *Eitel* factor considers the possibility that Defendant['s] default resulted from excusable neglect." *Viet. Reform Party v. Viet Tan – Viet. Reform Party*, 416 F. Supp. 3d 948, 970 (N.D. Cal. 2019). Here, there is little possibility of excusable neglect. Defendant SCAF answered Plaintiff's Complaint, (doc. 14), and defended itself in this action until its counsel withdrew. *See* (doc. 111.) Following its counsel's withdrawal, Defendant SCAF has taken no action in this case, has failed to communicate with Plaintiff or the Court, and failed to obtain replacement counsel within the time allotted. Moreover, this Court issued a warning order to Defendant SCAF on October 27, 2026, regarding the instant Motion for Default Judgment, *see* (doc. 137), which Defendant SCAF ignored. Therefore, there is little chance that Defendant SCAF's default was the result of excusable neglect. Thus, the sixth *Eitel* factor favors Plaintiff.

*vi. Policy for Deciding Cases on the Merits.*

Regarding the seventh *Eitel* factor, the Ninth Circuit has cautioned that "default judgments are ordinarily disfavored . . . . [and c]ases should be decided upon their merits whenever reasonably possible." *Tobacco v. Aims Grp. USA Corp.*, 723 F. Supp. 3d 973, 988 (D. Nev. 2024) (quoting *Eitel*, 782 F.2d at 1472). Nevertheless, "the mere existence of Rule 55(b) indicates that this preference, standing alone, is not dispositive." *Liberty Ins. Underwriters, Inc. v. Scudier*, 53 F. Supp. 3d 1308, 1318 (D. Nev. 2013) (citation omitted). Consequently, the seventh *Eitel* factor weighs against default judgment here. Notwithstanding the seventh factor, given that all other *Eitel* factors favor entry of default judgment, the Court shall enter default judgment against Defendant SCAF.

//

***3. Relief.***

Rule 54 dictates that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In other words, Rule 54 "allows only the amount prayed for in the complaint to be awarded to the plaintiff in a default." *Landstar Ranger*, 725 F. Supp. 2d at 923. "Furthermore, allegations as to the amount of damages must be proven." *Constr. Laborers Tr. Funds for S. Cal. Admin. Co.*, 807 F. Supp. 3d at 1057 (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)).

Here, "Plaintiff seeks recovery of twice the amount of the Checks ($1,199,956.00) pursuant to A.R.S. § 12-671(A)." (Doc. 127 at 16.) Pursuant to that provision, a person with "intent to defraud" who draws or delivers a check knowing that themselves or the principle's account has insufficient funds "shall be liable to the holder of such check . . . for twice the amount of such check . . . or fifty dollars, whichever is greater, together with costs and reasonable attorney's fees[.]" A.R.S. § 12-671(A). Additionally, Plaintiff seeks "prejudgment interest under A.R.S. § 44-1201 and post-judgment interest at the rate allowed by federal law." (Doc. 127 at 18.)

In support of the abovementioned requests, Plaintiff proffers a declaration in support of their motion and copies of the seven checks in question. (*Id.* at 29–48.) These exhibits support Plaintiff's underlying claims in this action. More importantly, these exhibits substantiate the damages Plaintiff's request given that the total amount of the checks proffered as exhibits multiplied by two equates $1,199,956.00. Thus, Plaintiff has met its burden in substantiating its claims and negating the need for an evidentiary hearing on its requested damages. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam); *see also Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) ("It is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation."). Moreover, Plaintiff's claims for pre-judgment interest under state law and post-judgment interest under federal law are both proper. *See Mooney v. Roller Bearing Co. of Am., Inc.*, 138 F.4th 1349, 1351

(9th Cir. 2025) (per curiam); *see also* 28 U.S.C. § 1961.

Given the above, the Court finds that the sum requested by Plaintiff is reasonable, with one caveat. Specifically, the Court notes that Plaintiff's request in the instant Motion differs in one regard from the request contained in its Complaint: Plaintiff makes no mention of joint and several liability in the instant Motion. *See generally* (doc. 127.) As noted above, default judgment may not differ in kind from that requested in Plaintiff's pleadings. *See* Fed. R. Civ. P. 54(c). While unmentioned in Plaintiff's Motion for Default Judgment, based upon Plaintiff's Complaint, *see* (doc. 1 at 25, 27, 33), and the applicable statutory provision, *see* A.R.S. § 47-3116, Plaintiff may seek joint and several liability of the requested $1,199,956.00. Notwithstanding Plaintiff's omission, the Court finds its requested damages, as modified to allow for joint and several liability, reasonable.

Consequently, Defendant SCAF is jointly and severally liable for damages in the amount of $1,199,956.00, plus pre-judgment interest under A.R.S. § 44-1201 and post-judgment interest under 28 U.S.C. § 1961.

***4. Conclusion on Motion for Default Judgment*.**

For the foregoing reasons, the Court finds that jurisdiction is proper here, the *Eitel* factors weigh in favor of default judgment, and Plaintiff's requested damages—as modified—are reasonable. Thus, the Court shall grant Plaintiff's Motion for Default Judgment with modifications.

**B. Motion for Summary Judgment.**

The second Motion at issue is Plaintiff's Motion for Summary Judgment. In the instant Motion, Plaintiff seeks summary judgment against individual Defendant Coury on three claims: (1) liability under Arizona's bad checks statute, A.R.S. § 12-671; (2) drawer liability under A.R.S. § 47-3414; and (3) indorser liability under A.R.S. § 47-3415. *See* (doc. 133 at 7–10.)

Given Plaintiff's instant claims, and considering the issues implicated in the instant Motion, the Court shall proceed as follows. First, the Court shall address whether Defendant Coury is liable for Defendant Moore's conduct regarding the seven checks at

issue. If so, the Court will then analyze whether Plaintiff is entitled to judgment as a matter of law on its three claims against Defendant Coury. Finally, the Court shall address whether the affirmative defenses that Defendant Coury proffered in his Answer to Plaintiff's Complaint are sufficient, on their own, to preclude summary judgment.

***1. Principal-Agent Relationship***.

Just as Defendants SCAF and Coury were in a principal-agent relationship, so too were Defendants Coury and Moore. Thus, the acts of Defendant Moore that were within the scope of his authority, actual or apparent, are binding upon Defendant Coury.

The Court need not reinvent the wheel here. As noted above, a principal-agent relationship is a fiduciary relationship wherein the principal gives express or implicit authority to an agent to act on their behalf. *See supra* section IV.A.2.ii.a; *see also Ruesga, LLC*, 161 P.3d at 1261 ("agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control[.]").

Based on the record before the Court, it is clear that Defendants Coury and Moore were in a principal-agent relationship. Here, the Authorization Letter, executed by Defendant Coury, expressly provided actual authority for Defendant Moore to act upon Defendant Coury's behalf regarding "all accounts managed by Steven C. Coury at 1st Bank Yuma" and to act as Defendant Coury's representative with the same. *See* (doc. 134-1 at 7); *see also* (doc. 134 at ¶¶ 2, 4.) Given this grant of express, written authority, Defendant Moore had actual authority to conduct transactions with 1st Bank Yuma on Defendant Coury's behalf. Given the principal-agent relationship here, Defendant Coury was bound by the acts of Defendant Moore that were within his actual authority, including the depositing of the seven checks.[12] *See* A.R.S. § 47-3402(A).

[12] The Court notes that on the "pay to the order of" line on all seven checks, Defendant Moore wrote "S.C.A.F." *See* (doc. 134-1 at 9–22.) The Court finds Defendant Coury nonetheless liable on these checks for two reasons. First, these checks were deposited into an account that Defendant Coury was "jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts, whether caused by you or another with access to this account." (*Id.* at 49.) Second, and in any event, the record before the Court reflects that SCAF was an alter ego of Defendant Coury. *See JTF Aviation Holding Inc. v. CliftonLarsonAllen LLP*, 472 P.3d 526, 530 (2020) (noting that while "Arizona law

Accordingly, Defendants Coury and Moore were in a principal-agent relationship wherein Defendant Coury was bound by the acts of Defendant Moore.

***2. Arizona Bad Check Statute Claim*.**

For similar reasons as in *supra* section IV.A.2.ii.b, the Court finds Plaintiff entitled to Judgment as a matter of law on its Arizona Bad Check Statute claim. As previously noted, an individual is liable for violating Arizona's Bad Check statute where they, with an intent to defraud, delivers a check knowing at the time that of delivery that he has insufficient funds "to meet the check or draft in full upon presentation[.]" *See* A.R.S. § 12-671(A). There is prima facie evidence of an intent to defraud where the drawer did not have sufficient funds at the time a check was deposited and thereafter failed to pay the checks within 12 days. *See id.* § 12-671(C).

Plaintiff has established it is entitled to judgment as a matter of law on the instant claim. As the record establishes, Defendant Coury's agent—Defendant Moore—deposited seven checks amounting to $599,978.00, into the SCAF Account at 1st Bank Yuma, drawn upon Defendant Coury's SWHB account that had insufficient funds to cover the face value of the checks. *See* (doc. 134 at ¶¶ 6–9.) Following Defendant Moore's withdrawal of $599,978.00 from the Account at 1st Bank Yuma, the subsequent dishonoring of the checks, and the deposit of the $1,006.27 cashier's check, the Account's balance was negative $598,971.73. *See* (*id.* at ¶¶ 16, 18–19, 21–22.) Defendant Coury failed to rectify the negative balance within 12 days of receiving notice from Plaintiff. *See* (*id.* at ¶¶ 28–29.)

Given the foregoing, Plaintiff has not only established prima facie evidence of intent to defraud on the part Defendant Moore, which is imputed upon Defendant Coury due to their principal agency relationship,[13] but has established Defendant Coury's liability under

---

is clear that the corporate status will not be lightly disregarded," the corporate veil may be disregarded where "there is sufficient evidence that 1) the corporation is the alter ego or business conduit of a person, and 2) disregarding the corporation's separate legal status is necessary to prevent injustice or fraud.") (citations omitted).

[13] Although corporate officers are generally shielded from individual liability for good faith actions taken as part of their corporate duties, "their status does not shield them from personal liability to those harmed as a result of intentionally harmful or fraudulent conduct." *Albers v. Edelson Tech. Partners L.P.*, 31 P.3d 821, 826 (Ariz. Ct. App. 2001).

Arizona's Bad Check statute. Consequently, Plaintiff is entitled to judgment as a matter of law on its Arizona Bad Check statute claim.

***3. Drawer and Indorser Liability*.**

Plaintiff's second and third claims are based upon Arizona's Drawer and Indorser Liability statutes, A.R.S. §§ 47-3414–15. *See* (doc. 133 at 9.) As mentioned above, under Arizona's Drawer Liability statute, a "drawer is obliged to pay the draft according to its terms at the time it was issued[.]" A.R.S. § 47-3414(B). Under Arizona's Indorser Liability statute, "if an instrument is dishonored, an indorser is obliged to pay the amount due on the instrument according to the terms of the instrument at the time it was indorsed[.]" A.R.S. § 47-3415(A).

Regarding Plaintiff's drawer liability claim, as previously noted, Defendant Moore deposited seven checks at 1st Bank Yuma that were not accepted and dishonored, *see supra* section IV.A.2.ii.c, *see also* (doc. 134 at ¶ 20), and this act was imputed upon Defendant Coury due to their principal-agent relationship. *See supra* section IV.B.1. By virtue of the seven checks being deposited at 1st Bank Yuma, it became the holder of the checks and the entity entitled to enforce those checks. *See Ferrugio*, 358 F. Supp. 3d at 890 ("If a customer delivers an item to a depositary bank for collection the depositary bank becomes a holder of the item."). Because Plaintiff was entitled to enforce the checks, and given that the checks were unaccepted and dishonored, Plaintiff has established its entitlement to relief against Defendant Coury under A.R.S. § 47-3414(B).

Turning next to Plaintiff's indorser liability claim, the Court likewise finds that Plaintiff has met its burden. First, by virtue of Defendants Coury and Moore's principal-agent relationship, and given that the execution and deposit of the checks fell squarely within Defendant Moore's actual authority, *see* (doc. 134 at ¶¶ 2–4), Defendant Coury was the indorser of the seven checks at issue. Second, given the stop payment directive, the checks were dishonored. Because 1st Bank Yuma was entitled to enforce the checks as

---

Given that the acts of Defendant Moore fell within his actual authority—which is imputed upon Defendant Coury—and considering that Defendant Moore acted with an intent to defraud, Defendant Coury is personally liable for the acts involved here.

their holder, Defendant Coury is accordingly liable to Plaintiff given that Plaintiff is 1st Bank Yuma's successor-in-interest.

Accordingly, Plaintiff has stated state law drawer and indorser liability claims upon which it is entitled to judgment as a matter of law.

***4. Affirmative Defenses.***

Given that Plaintiff has established its entitlement to judgment as a matter of law on its three claims against Defendant Coury, the Court must next address whether his affirmative defenses asserted in his Answer to Plaintiff's Complaint preclude entry of judgment.[14]

Although Defendant Coury has asserted 15 specific affirmative defenses in his Answer, *see* (doc. 13 at 9–10), the Court is under no obligation to address any for the following reasons. As noted by the Ninth Circuit Court of Appeals, affirmative defenses with "little more than a conclusory statement of fact and self-serving declarations" are insufficient to defeat a motion for summary judgment. *See United States v. Wilson*, 881 F.2d 596, 601 (9th Cir. 1989). Here, Defendant Coury, given his failure to respond to the instant Motion, has not even provided a conclusory statement of fact or a self-serving declaration in support of his affirmative defenses. In short, "cryptic affirmative defense[s] lurking quietly in an answer, but never presented in the [D]efendant's papers, is insufficient to prevent summary judgment." *HDMI Licensing Admin'r, Inc. v. Availink Inc.*, 816 F. Supp. 3d 1047, 1056 (N.D. Cal. 2026); *United States v. Mirama Enterprises, Inc.*, 185 F. Supp. 2d 1148, 1162 (S.D. Cal. 2002) (noting that affirmative defenses set out in an answer without any factual or legal support is insufficient to deny summary judgment).

Consequently, Defendant Coury has failed to rebut Plaintiff's entitlement to judgment as a matter of law on its claims.

## V. CONCLUSION.

For the foregoing reasons, Plaintiff has carried its burden in establishing its

---

[14] By virtue of his failure to respond to Plaintiff's Motion for Summary Judgment, Defendant Coury's only asserted affirmative defenses are in his Answer to Plaintiff's Complaint.

entitlement to an entry of default judgment against Defendant SCAF and entry of summary judgment against Defendant Coury. Therefore, the Court will enter judgment against Defendants SCAF and Coury, jointly and severally, in the amount of $1,199,956.00, plus pre-judgment interest under A.R.S. § 44-1201 and post-judgment interest under 28 U.S.C. § 1961(a).

Although the Court enters judgment on Plaintiff's request for damages and pre- and post-judgment interest, the Court shall not enter judgment for the requested amount of attorneys' fees because Plaintiff has not provided the information required by Rule 54.2 of the Local Rules of Civil Procedure. Nevertheless, Plaintiff may file a motion for attorneys' fees in accordance with the applicable Federal and Local Rules of Civil Procedure.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Entry of Default and Default Judgment (doc. 127) is **GRANTED** as modified.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (doc. 133) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff against Defendant Steve Coury Automotive Family, Inc. dba Steve Coury Ford and Defendant Steven C. Coury, jointly and severally, in the amount of $1,199,956.00, plus pre-judgment interest under A.R.S. § 44-1201 and post-judgment interest under 28 U.S.C. § 1961(a).

**IT IS FURTHER ORDERED** that Plaintiff's deadline to file a motion for attorneys' fees against Defendants SCAF and Coury is **DECEMBER 3, 2026**.

Dated this 19th day of November, 2026.

Honorable John Z. Boyle
United States Magistrate Judge